Leonard SMITLEY and Joseph W. Drown, d/b/a Crown Cafeteria, a copartnership, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 18295.

United States Court of Appeals Ninth Circuit.

Jan. 30, 1964.

Sweeney, Irwin & Foye, Peter W. Irwin, and Mathias Diederich, Los Angeles, Cal., for petitioners.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, James C. Paras and Stephen B. Goldberg, Attys., N. L. R. B., Washington, D. C., for respondent.

Before BARNES, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Petition to review an order of the National Labor Relations Board which dismissed an unfair labor practice complaint that had been issued on charges filed by the petitioners. The complaint alleged that the unions involved had picketed the Crown Cafeteria in Long Beach, California, owned by petitioners, in violation of section 8(b) (7) (C) of the National Labor Relations Act as amended (29 U.S.C. § 158(b) (7) (C), as amended). The pertinent portions of the statute involved read as follows, with certain key words and phrases emphasized by us:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

* * *

"(7) *to picket* * * *

"any employer *where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization* as the representative of his employees, *or forcing or requiring the employees of an employer to accept or select such labor organization* as their collective bargaining representative, *unless such labor organization is currently certified* as the representative of such employees:

"(A) *where* the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question

concerning representation may not appropriately be raised under section 159(c) of this title,

"(B) *where* within the preceding twelve months a valid election under section 159(c) of this title has been conducted, or

"(C) *where such picketing* has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided*, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c) (1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose* of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, *unless an effect of such picketing is to induce* any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

■ The findings of the Board as to the facts are not attacked. It found, in substance, that the unions picketed the cafeteria for more than thirty days before filing a representation petition under section 9(c) of the Act (29 U.S.C. § 159(c)), that an object of the picketing was to secure recognition, that the purpose of the picketing was truthfully to advise the public that petitioners employed non-union employees or had no contract with the unions, and that the picketing did not have the effect of inducing any stoppage of deliveries or services to the cafeteria by employees of any other employer. The matter was twice heard by the Board, which first concluded, by a majority of 3 to 2, that the picketing did violate the statute in question (130 NLRB 570), and then held, following a change in its membership, and by a majority of 3 to 2, that the picketing did not violate the statute (135 NLRB 1183). We conclude that the views of the Board, as stated after its second consideration of the matter, are correct, and that the statute has not been violated.

The Board states its interpretation of the section, including the proviso quoted above, as follows:

"Congress framed a general rule covering all organizational or recognitional picketing carried on for more than 30 days without the filing of a representation petition. Then, Congress excepted from that rule picketing which, although it had an organizational or recognitional objective, was addressed primarily to the public, was truthful in nature, and did not interfere to any significant extent with deliveries or the rendition of services by the employees of any other employer."

■ We think that this is the correct interpretation. It will be noted that subdivision (7) of subsection (b), section 8, quoted above, starts with the general prohibition of picketing "where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization" (This is often called recognitional picketing) "* * * or forcing or requiring the employees of an employer to accept or select such labor organization * * *." (This is often called organizational picketing), "* * * unless such labor organization is currently certified as the representative of such employees: * * *." This is followed by three subparagraphs, (A), (B) and (C). Each begins with the same word, "where." (A) deals with the situation "where" the employer has lawfully recognized another labor organization and a question of representation cannot be

raised under section 9(c). (B) refers to the situation "where," within the preceding 12 months, a valid election under section 9(c) has been conducted. (C), with which we are concerned, refers to a situation "where" there has been no petition for an election under section 9(c) filed within a reasonable period of time, not to exceed thirty days, from the commencement of the picketing. Thus, section 8(b) (7) does not purport to prohibit all picketing having the named "object" of recognitional or organizational picketing. It limits the prohibition of such picketing to three specific situations.

There are no exceptions or provisos in subparagraphs (A) and (B), which describe two of those situations. There are, however, two provisos in subparagraph (C). The first sets up a special procedure for an expedited election under § 9(c). The second is the one with which we are concerned. It is an exception to the prohibition of "such picketing," i. e., recognitional or organizational picketing, being a proviso to a prohibition of such picketing "where" certain conditions exist. It can only mean, indeed, it says, that "such picketing," which otherwise falls within subparagraph (C), is not prohibited if it falls within the terms of the proviso. That proviso says that subparagraph (C) is not to be construed to prohibit "any picketing" for "the purpose" of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization. To this exception there is an exception, stated in the last "unless" clause, namely, that "such picketing," i. e., picketing where "an object" is recognitional or organizational, but which has "the" excepting "purpose," would still be illegal if an effect were to induce any individual employee of other persons not to pick up, deliver, or transport any goods, or not to perform any services. Admittedly, the picketing here does not fall within the "unless" clause in the second proviso to subparagraph (C). It does, however, fall within the proviso, since it does have "the purpose" that brings it within the

proviso. It also has "an object" that brings it within the first sentence of subsection (b) and the first clause of subdivision (7), and within the circumstances stated in the opening clause of subparagraph (C). If it did not have "an object" bringing it within subdivision (7), it would not be prohibited at all. Moreover, if it did have that "object," it still would not be prohibited at all, unless it occurred in circumstances described in subparagraph (A), (B) or (C). Here, neither (A) or (B) applies; (C) does. But, unlike (A) or (B), it has an excepting proviso. Unless that proviso refers to picketing having as "an object" either recognition or organization, it can have no meaning, for it would not be an exception or proviso to anything. It would be referring to conduct not prohibited in section 8(b) at all.

Petitioners urge that if the picketing has as "an object" recognition or organization, then it is still illegal, even though it has "the purpose" of truthfully advising the public, etc., within the meaning of the second proviso to subparagraph (C). It seems to us, as it did to the Board, that to so construe the statute would make the proviso meaningless. The hard realities of union-employer relations are such that it is difficult, indeed almost impossible, for us to conceive of picketing falling within the terms of the proviso that did not also have as "an object" obtaining a contract with the employer. This is normally the ultimate objective of any union in relation to an employer who has employees whose jobs fall within the categories of employment that are within the jurisdiction of the union, which is admittedly the situation here.

We note that the Court of Appeals for the Second Circuit has reached a similar conclusion. In N. L. R. B. v. Local 3, International Bhd. of Electrical Workers, 2 Cir., 1963, 317 F.2d 193, that court considered the section at some length, and said:

"It seems, however, much more realistic to suppose that Congress framed a general rule covering the

field of recognitional and organizational picketing, conducted under alternate sets of circumstances described in subparagraphs (A), (B), and (C), and then excepted from the operation of the rule, as it applied to the circumstances set forth in subparagraph (C), a comparatively innocuous species of picketing having the immediate purpose of informing or advising the public, even though its ultimate object was success in recognition and organization.

\* \* \* \* \* \*

"One of the principal difficulties in construing and applying subparagraph (C) is that Section 8(b) (7) contains the partially synonymous words, 'object' and 'purpose', used in two distinct contexts but to which much of the same evidence is relevant. These are: 'where an object thereof is forcing or requiring an employer to recognize or bargain \* \* \*' and 'for the purpose of truthfully advising the public \* \*.' It does not necessarily follow that, where an object of the picketing is forcing or requiring an employer to recognize or bargain, the purpose of the picketing, in the context of the second proviso, is not truthfully to advise the public, etc. The union may legitimately have a long range or strategic objective of getting the employer to bargain with or recognize the union and still the picketing may be permissive. This proviso gives the union freedom to appeal to the unorganized public for spontaneous popular pressure upon an employer; it is intended, however, to exclude the invocation of pressure by organized labor groups or members of unions, as such.

"The permissible picketing is, therefore, that which through the dissemination of certain allowed representations, is designed to influence members of the unorganized public, as individuals, because the impact upon the employer by way of such individuals is weaker, more indirect and less coercive."

We agree. See also Getreu v. Bartenders and Hotel & Restaurant Employees Union Local 58, D.C.N.D.Ind., 1960, 181 F. Supp. 738.

Both sides have reviewed legislative history. We think this unnecessary, because we think that the meaning of the statute is clear. We also find the history inconclusive, but it seems to us to point somewhat more strongly toward the view that we here adopt than to the contrary view. Petitioners rely on language used by Senator Kennedy, who was one of the sponsors of the bill in the Senate and one of the Senate Conferees, in which he referred to the second proviso as permitting "purely informational" picketing. Counsel for petitioners frankly conceded, however, at oral argument, that most of the legislative history is against the view that he urged, and we agree. A discussion of legislative history appears in the dissent to the Board's first opinion, (130 NLRB 576–77) and we therefore do not repeat it here. We think that even Senator Kennedy's comment, upon which petitioners most heavily rely, taken in context, was not intended to have the limiting effect which petitioners would give it. Senator Kennedy was more concerned, on the one hand, with the economic pressure involved in recognitional and organizational picketing, and on the other hand, with the right of labor truthfully to advise the public that the employer was non-union, or that the employer did not have a contract with the union, than he was with whether or not, in addition to having an informational purpose described in the proviso, there was also a recognitional or organizational object. See 105 Cong.Rec. 17898 (1959). See also Cox, The Landrum-Griffin Amendments to the National Labor Relations Act, 44 Minn.L.Rev. 258, 267. Mr. Cox, now the Solicitor General, was then Senator Kennedy's chief advisor on the bill.

We think that, in substance, the effect of the second proviso to subparagraph (C) is to allow recognitional or organiza-

tional picketing to continue if it meets two important restrictions: (1) it must be addressed to the public and be truthful and (2) it must not induce other unions to stop deliveries or services. The picketing here met those criteria.

The petition is denied.