NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

Gene HYDE, d/b/a Hyde's Supermarket,
Respondent.

No. 19350.

United States Court of Appeals
Ninth Circuit.

Dec. 15, 1964.

Rehearing Denied Feb. 4, 1965.

**569**

HAMLEY, Circuit Judge:

This case is before the court upon the petition of the National Labor Relations Board to enforce its order issued against Gene Hyde, doing business as Hyde's Supermarket.

The Board found and concluded that Hyde violated section 8(a) (5) of the National Labor Relations Act (Act), 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158(a) (5), by repudiating his contract with Local 1612 of the Retail Clerks International Union (Union). The Board further found and concluded that Hyde violated section 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1), by thereafter granting his employees a wage increase without notice to the Union, which increase was not provided for in the contract.

Hyde was directed to recognize the Union as his employees' exclusive bargaining representative, to honor the contract, and to post the usual notice. In addition, Hyde was directed to cease and desist from engaging in any like or related conduct in derogation of his statutory duty to bargain, and from granting any wage increases to employees under circumstances which interfere with their rights under section 7 of the Act, 29 U.S.C. § 157.

Resisting the petition for enforcement, Hyde first argues that there is no substantial evidence that the Union ever validly represented a majority of his eleven employees.

The Union claimed a majority on the basis of authorization cards signed by eight employees on March 29 and 30, 1963, these signatures being verified on April 1, 1963, by a card check conducted by a person chosen by Hyde. At the hearing before the trial examiner, Hyde contended that, due to misrepresentations by the Union organizer when the authorization cards were obtained, at least five employees signed in the belief that the selection of the Union as their bargaining agent would be effected only by a secret ballot.

The trial examiner disregarded one of the eight cards because the signature was

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, George B. Driesen, Attorneys, N. L. R. B., Washington, D. C., for petitioner.

Gunther F. Krause, Portland, Willard K. Carey, La Grande, Fredric R. Merrill, Krause, Lindsay & Nahstoll, Portland, Or., for respondent.

Before POPE, HAMLEY and DUNIWAY, Circuit Judges.

based on a fellow employee's statement that the purpose of the card was to authorize an election. The examiner further found that the Union organizer did not misrepresent anything. At most, the examiner stated, some of the employees misunderstood, through no fault of the organizer, what they were told regarding the legal effect of signing such cards. He therefore concluded that at least seven of the cards, representing a majority of the employees, were valid.

■■ The examiner's finding is supported by substantial evidence. The conclusion he drew therefrom is correct. Under the circumstances of this case, it appearing that the cards clearly authorize the Union to act as the representative, the fact that some of the employees who signed the cards may have done so with an unexpressed and unilateral misunderstanding is not enough to invalidate the cards. See N. L. R. B. v. Greenfield Components Corp., 1 Cir., 317 F.2d 85, 89.

■■ In this court Hyde has changed or added to his contention with regard to asserted misrepresentations in obtaining the cards. He now contends that the Union organizer falsely told seven employees who signed cards that Hyde would have a free choice of accepting the cards or have a secret Board-conducted election. He contends that the representations were false because an employer, when faced with signed authorization cards of a majority of his employees, has no option to reject the cards and demand an election.[1]

■ The Board examiner stated no conclusion as to this contention because it was not urged in the administrative proceedings.[2] The contention not having been expressly raised before the Board, it therefore appears to be one which should not be considered in this enforcement proceeding. See N. L. R. B. v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 790; N. L. R. B. v. Park Edge Sheridan Meats, Inc., 2 Cir., 323 F.2d 956, 959; section 10(e) of the Act, 29 U.S.C. § 160(e).

■ In any event, under the facts of this case, it would not have been a material misrepresentation if the organizer did tell the employees that Hyde would have a choice between an election and a card check. In a broad sense, Hyde did have such a choice since if he had a good faith doubt as to the validity of the cards he could have demanded an election. Snow v. N. L. R. B., 9 Cir., 308 F.2d 687,

1. Section 9(c) (1) of the Act, 29 U.S.C. § 159(c) (1), provides machinery by which the question of representative status may be determined in a Board-conducted election. But an employer has no absolute right to demand an election. N. L. R. B. v. Trimfit of California, Inc., 9 Cir., 211 F.2d 206, 209. Where a union has obtained authorization cards signed by a majority of the employees in an appropriate unit an employer, absent a good faith doubt of the union's majority, violates section 8(a) (5) of the Act if he refuses to recognize and bargain with the union. Snow v. N. L. R. B., 9 Cir., 308 F.2d 687, 691. There is no showing here that, on April 1, 1963, Hyde had a good faith doubt as to the Union's majority.

2. In Hyde's appeal to the Board, he did except to the failure of the trial examiner to find that the Union organizer " * * * told the employees that there would be an election because Respondent would have a choice of an election or recognizing the Union on the basis of a card check and Respondent would certainly choose the election."
The exception is ambiguous. It does not specify that the misrepresentation was that respondent would have a *choice* between making a card check or requiring an election.
In addition, at no place in the proceedings does Hyde make any argument to the Board that, under the law, it would be a misrepresentation if the organizer told the employees that Hyde had a choice between a card check and an election. The failure of the respondent to make any such legal argument adds weight to the interpretation that the exception was not directed to whether Hyde had any choice in the matter.
The exception appears instead to be directed to the Board examiner's conclusion that there was no representation that the sole purpose of the employees in signing the cards was to secure an election.

691. Even more important, the crucial issue is whether a majority of the employees desired to be represented by the Union. The question as to whether Hyde had a "choice" is important only to the extent that if he chose an election, then the employees would have a second chance to decide whether they wanted to be represented by the Union. On the other hand, the employees knew that if Hyde chose the card check, the Union would be their representative without further proceedings.

For the representation that Hyde would have a choice to be material it would have to be shown that the employees would not have signed the cards authorizing the Union to represent them if they had known that Hyde's choice was only a qualified choice. But no such showing was made. On the contrary, the trial examiner found that the underlying employee sentiment at the time they signed the cards was that they desired to be represented by the Union, and that their intention was not primarily to obtain a future election.

The trial examiner's finding is supported by substantial evidence. That evidence included the following items: the employees knew that a card check might be accepted by Hyde, or that, at least, it was an alternative to an election; at the March 29 meeting the employees instructed the organizer to request of Hyde that a card check be used; subsequent to the March 29 meeting, most of the employees refused to change their minds about being represented by the Union when asked to do so by Jeanette Tsiatsos, one of the employees who had signed a card; and Sandy Jennings, who had signed a card, did not indicate any objection when she was advised that Hyde had accepted a card check and had signed a contract with the Union.

Under such circumstances the representation cannot be held to be material.

Hyde urges that even if the Union represented a majority of the employees, the examiner's finding that Hyde was not acting in good faith in refusing to bargain is not supported by substantial evidence.

Hyde signed a contract with the Union on April 1, 1963, immediately after the card check revealed that a majority of his employees had signed authorization cards. He repudiated the contract on April 6, 1963, after receiving a petition signed by nine employees in which it was recited that the cards were signed under a representation by the Union that this was necessary in order to obtain a secret election. Thus "refusal to bargain," in this context, meant unilateral termination of a contract already bargained for and in effect. See section 8(d) of the Act, 29 U.S.C. § 158(d).

Viewing the record as a whole, the examiner's implied finding that Hyde did not act in good faith in repudiating the contract is supported by substantial evidence.

Hyde contends that he is to be excused from refusing to bargain (repudiating the contract) because the Union did not bargain in good faith. In this connection he asserts that the Union threatened him with picketing and an unfair labor listing unless he accepted an immediate card check on April 1, two days before the time originally scheduled for the card check.

Threats of picketing are not illegal in the context in which they have here been used. See Barker Brothers Corp. v. N. L. R. B., 9 Cir., 328 F.2d 431; Smitley v. N. L. R. B., 9 Cir., 327 F.2d 351. Nor was the threat of an unfair labor listing illegal since if Hyde refused the card check without a good faith doubt he would have committed an unfair labor practice. See Snow v. N. L. R. B., 9 Cir., 308 F.2d 687, 691. There is no other evidence to support Hyde's contention of bad faith on the part of the Union.

Turning to the determined violation of section 8(a) (1), Hyde argues that the Board did not have substantial evidence to support its conclusion that, by giving wage increases without Union authoriza-

tion, he interfered with the rights of employees under that section.

The crux of this argument is that there is an absence of any evidence to show that the intention or motive on the part of Hyde in giving the wage increase was to restrain or coerce the employees in the exercise of their rights under section 7.[3]

The Supreme Court has had occasion to examine the issue of whether good faith is always a defense where an employer unilaterally raises employee wages. N. L. R. B. v. Katz, 369 U.S. 736, 742–743, 747, 82 S.Ct. 1107, 8 L.Ed.2d 230. In Katz the Court, in dealing with section 8(a) (5), said that the duty to bargain collectively, as defined under section 8(d), " * * * may be violated without a general failure of subjective good faith; for there is no occasion to consider the issue of good faith if a party has refused even to negotiate * * *." (369 U.S. at 743, 82 S.Ct. at 1111).

Hyde disregarded his duty to negotiate with the duly constituted Union representative as to any raises to be given to the employees. The unilateral wage increase evidences that refusal to bargain, and, as such, constituted a violation of section 8(a) (1) by interfering with the employees' protected rights under section 7 of the Act.[4]

Finally, Hyde contends that the Board exceeded its authority under section 10 (c) of the Act by its order requiring Hyde to honor the contract.

Hyde interprets this feature of the order as a declaration that the contract is valid in all respects and that Hyde is directed to perform it. He argues that the Board's jurisdiction extends only to unfair labor practices, and since a breach of contract, the repudiation in this case, has been held not to be an unfair labor practice, Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 443–444, note 2, 75 S.Ct. 489, 99 L.Ed. 510 the Board did not have jurisdiction over any of the contract aspects of this case.

In general, the Board has no power to adjudicate contractual disputes. See United Steelworkers of America, A.F.L.–C.I.O. v. American Internat'l Aluminum Corp., 5 Cir., 334 F.2d 147, 152. But where, as in this case, the breach of contract by repudiation is an intrinsic part of the unfair labor practice of refusing to recognize and bargain with the duly constituted employee representative, the Board's jurisdiction, under section 10(c), includes the power to remedy that phase of the unfair labor practice. See Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126.

In this case an appropriate remedy was to require the employer to recognize and bargain with the Union. Since the repudiation of the contract was based on the refusal to recognize and bargain with the Union, part of the appropriate remedy was to eradicate the repudiation by requiring the employer to "honor" the contract. See H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 526, 61 S.Ct. 320, 85 L.Ed. 309.

Read in this light, the word "honor" has the limited role of placing the parties, with reference to the contract, back in the position which they occupied prior to the breach. It does not mean that specific performance was decreed as Hyde

3. Hyde cites N. L. R. B. v. Cleveland Trust Co., 6 Cir., 214 F.2d 95, 98–99; and N. L. R. B. v. W. T. Grant Co., 4 Cir., 208 F.2d 710, 712. In each of those cases, however, the respective court held that a wage increase did not violate section 8(a) (1), because they were given prior to certification and because the employer was motivated by wage increases given by a competitor. The court in the W. T. Grant Co. case explicitly excepted the case where there is a certified union with which the employer could bargain.

4. See Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 686–687, 64 S.Ct. 830, 88 L.Ed. 1007; N. L. R. B. v. Parma Water Lifter Co., 9 Cir., 211 F.2d 258, 263; N. L. R. B. v. Chain Service Restaurant etc., Employees, Local 11, 2 Cir., 302 F.2d 167, 171–172.

contends. Nor is it an adjudication as to the validity of any or all of the contract provisions.

The order of the Board will be enforced.