**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GEORGE E. LIGHT BOAT STORAGE, INC., Respondent.**

**No. 22962.**

United States Court of Appeals
Fifth Circuit.

Feb. 28, 1967.

As Modified March 23, 1967.

**764**

Marcel Mallet-Prevost, Asst. Gen. Counsel, Richard S. Rodin, Atty., NLRB, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Gary Green, Atty., NLRB, Washington, D. C., for petitioner.

Robert R. Breaker, LaPorte, Tex., for respondent.

Before WISDOM, BELL, and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

The National Labor Relations Board seeks a decree enforcing its order of July 2, 1965, against the George E. Light Boat Storage Company.[1] There is substantial

---

1. George E. Light Boat Storage, Inc., 1965, 153 N.L.R.B. 1209.

evidence in the record to support the Board's determination that the Company violated sections 8(a) (1), 8(a) (3), and 8(a) (5) of the Labor-Management Relations Act, 29 U.S.C. §§ 158(a) (1), 158 (a) (3), and 158(a) (5). The principal question concerns the scope of the remedy.

In 1962 the Company had an extensive business transporting men and equipment between the Texas mainland and offshore oil rigs. March 1, 1962, after a Board certification proceeding, George E. Light, president and majority owner of the Company, and representatives of the Inland Boatmen's Union [2] executed a collective bargaining agreement. The contract was for two years, and from year to year thereafter, subject to reopening after one year on the subject of wages only. The agreement provided for extension beyond the 1964 termination date:

> [T]his agreement shall continue in effect from year to year following February 28, 1964, or succeeding anniversary dates, and provided further, the parties may mutually agree in writing upon an extension of the Agreement to avoid such termination.

In 1963, during the term of the contract, Light's business suffered a severe slump. After discussing the Company's position with the Union, and after obtaining the Union's consent, the Company made certain temporary changes in the wages and hours provisions of the contract. The Company was to restore the original contract terms when its business returned to normal.

By an exchange of letters in February, 1964, the parties agreed to extend the contract for one year, and the Company agreed to increase its contribution to the Seafarers' Welfare Fund from $1.75 to $1.95 per employee per day. In August 1964 the Company stopped making pay-ments into the Fund. President Light explained that the Company was short of funds but would be able to resume fulfilling its contractual obligations if certain "relief drivers" were eliminated. October 1, 1964, the president of the Company called the employees together and informed them that he was changing their working conditions. He made substantial unilateral changes in wages and hours, embodying these in individual agreements with the employees. The same day, the Company discharged Fred Tischhauser and John Odom, two crew boat operators who had been active in support of the Union. Despite the Union's protests the Company refused to rescind its action. Thereafter, the Company refused to abide by any terms of the Union contract. In December 1964, the Union informed the Company that it was giving sixty days' notice pursuant to reopening the contract on its expiration date, February 28, 1965. When the Company still refused to act, the Union filed the present unfair labor charges.

## I.

■ The company contends that Tischhauser and Odom were discharged for cause and, as is usual in such a case as this, presents evidence supporting its position. The Board however is free to draw the conflicting inference that the discharge violated sections 8(a) (1) and 8(a) (3) when there is also substantial evidence that the discharges resulted from union animus. NLRB v. Longhorn Transfer Serv., Inc., 5 Cir.1965, 346 F. 2d 1003; Ken-Lee, Inc. v. NLRB, 5 Cir. 1962, 311 F.2d 608; NLRB v. Linda Jo Shoe Co., 5 Cir.1962, 307 F.2d 355; NLRB v. Hudson Pulp & Paper Corp., 5 Cir.1960, 273 F.2d 660; Edward G. Budd Mfg. Co. v. NLRB, 3 Cir.1943, 138 F.2d 86, cert. denied, 1944, 321 U.S. 778, 64 S.Ct. 619, 88 L.Ed. 1071.[3]

---

**2.** Inland Boatmen's Union of the Seafarers' International Union of North America, Atlantic, Gulf, Lakes, and Inland Waters District.

**3.** "If there are two grounds for discharge, one proper and the other unlawful, and the evidence as a whole would make the inferences as to which was the motivating cause reasonably equal, the conclusion reached by the Board should be sustained." NLRB v. Hudson Pulp & Paper Corp., 5 Cir. 1960, 273 F.2d at 666.

■ Here the evidence points strongly to the two employees' having been discharged because of their union activity. The record discloses numerous occasions on which the management had warned the employees to tone down or cease their activities. Tischhauser and Odom were discharged the same day the Company repudiated the union contract. The incidents on which the Company allegedly based the discharges occurred months before the actual firings.

■ To remedy these violations of sections 8(a) (1) and (3), the Board ordered the Company to offer to reinstate the two employees, and to pay them backpay according to the formula of F. W. Woolworth, 1950, 90 N.L.R.B. 289. This was an appropriate order, which we enforce. See Labor-Management Relations Act, § 10(c), 29 U.S.C. § 160(c).

■ The Board further ordered the Company to pay interest on these backpay awards according to the doctrine the Board adopted in Isis Plumbing & Heating Co., 1962, 138 N.L.R.B. 716, enforcement denied on other grounds, 9 Cir. 1963, 322 F.2d 913. Although this Court has not yet passed on the inclusion of interest in backpay awards, the six circuits which have dealt with the question have allowed interest.[4] We agree with the other Courts of Appeals, and therefore enforce this part of the Board's order.

## II.

■ The Board found that the Company by repudiating the union contract,[5] executing agreements with individual employees,[6] and making unilateral changes in wages and hours,[7] had violated section 8(a) (5)'s mandate to bargain in good faith with the certified representative of its employees. The Company's defense is that according to Texas law the contract was invalid since the corporation's board of directors had not ratified it. In support of its view the Company presents a judgment of the Texas Court of Civil Appeals, based on this reasoning, denying the Seafarers' Welfare Fund recovery against the Company on the contract. The argument is without substance. State law does not determine the validity of a contract in proceedings such as these. See Local 174, Teamsters, Chauffeurs, etc. v. Lucas Flour Co., 1962, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972; Lozano Enterprises, Inc. v. NLRB, 9 Cir. 1964, 327 F.2d 814; Rabouin v. NLRB, 2 Cir. 1952, 195 F.2d 906.

■ Federal law will not permit such nice formalities to shield the Company from the consequences of its repudiation of the contract. In 1963 when the Company asked the Union for a temporary modification in the terms of the contract, it acted as if it were bound by the contract. During the renewal negotiations in 1964 there was no hint that the Company believed the contract was invalid. We will not allow the Company to lull the Union into a sense of security and then when the time comes for performance assert the invalidity of the contract. For the purposes of these proceedings the contract must be considered valid. The Company's repudiation and accompanying actions therefore constituted a failure to bargain in good faith in violation of section 8(a) (5). See cases cited in notes 5, 6, and 7, supra.

4. Reserve Supply Corp. of Long Island v. NLRB, 2 Cir. 1963, 317 F.2d 785; NLRB v. Globe Prods. Corp., 4 Cir. 1963, 322 F.2d 694; Philip Carey Mfg. Co., etc., v. NLRB, 6 Cir. 1964, 331 F.2d 720, cert. denied, 379 U.S. 888, 85 S.Ct. 159, 13 L.Ed. 2d 92; Revere Copper & Brass, Inc. v. NLRB, 7 Cir. 1963, 324 F.2d 132; Marshfield Steel Co. v. NLRB, 8 Cir. 1963, 324 F.2d 333; Intern. Broth. of Operative

Potters v. NLRB, 1963, 116 U.S.App.D.C. 35, 320 F.2d 757.

5. NLRB v. Hyde, 9 Cir. 1964, 339 F.2d 568.

6. J. I. Case Co. v. NLRB, 1944, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762; see NLRB v. Wings & Wheels, Inc., 3 Cir. 1963, 324 F.2d 495.

7. NLRB v. Katz, 1962, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230.

To remedy the Company's various violations of section 8(a) (5) the Trial Examiner recommended that the Board order the Company to cease and desist from repudiating the contract, granting unilateral wage increases, dealing directly with the employees, and otherwise failing to bargain with the Union. He further recommended that the Company be ordered to cancel individual contracts, to meet and bargain with the Union at its request, to reimburse all its employees "who have worked overtime during the existence of the above mentioned contract" at the contract rate, and to

> "Reactivate, acknowledge the validity of, and abide by the terms of the collective-bargaining contract entered into by Respondent and the Union and effective on March 1, 1962, as modified by the parties since then and as the parties may further modify the same, until such contract expires or is terminated." 153 N.L.R.B. at 1222.

The Trial Examiner felt that the Company's discontinuance of payments to the welfare fund constituted a breach of contract remediable only by a court. 153 N.L.R.B. at 1219. The Board, however, disagreed, and ordered the Company to "pay into the Seafarers' Welfare Fund such sums as would have been paid into said Fund absent the illegal changes in wages." 153 N.L.R.B. at 1210.

■ A. We deal first with the Board's orders to cease and desist from the various violations of section 8(a) (5), and its affirmative orders to bargain upon request of the Union, to embody any agreement reached through such bargaining in a written agreement, and to cancel the individual contracts. All these are common remedies for violation of section 8(a) (5) and are within the scope of the Board's authority. San Antonio Mach. & Supply Corp. v. NLRB, 5 Cir. 1966, 363 F.2d 633 (order to bargain and sign agreement); J. I. Case Co. v. NLRB, 1944, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (cancellation of individual contracts); Medo Photo Supply Corp. v. NLRB, 1944, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (cease and desist from granting unilateral wage increases). We therefore enforce these portions of the Board's order.

B. The unusual provisions of the Board's order in this case are those directing the Company to reactivate and abide by the contract, and to pay back overtime and back welfare payments for all its employees according to the contract. The first question is whether the Board has authority to enter such orders "enforcing" a contract. We hold that in circumstances such as these the Board does have such authority. The second question is whether such orders may apply to periods beyond the expiration of the contract. We hold, limiting our decision to the facts of this case, that they may not. Since the Board's order is ambiguous in this respect, we interpret it not to apply to such periods, and as so interpreted, enforce the order.

■■ (1) Where the act of the employer constitutes both an unfair labor practice and a breach of contract, both the courts and the Board have jurisdiction to remedy the wrong. Smith v. Evening News Ass'n, 1962, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246. It does not necessarily follow, however, that the courts and the Board have the same remedies at their disposal. Proceedings before the two forums are not at all of the same nature. See United Steelworkers of America, AFL–CIO v. American International Aluminum Corp., 5 Cir. 1964, 334 F.2d 147, 152, cert. denied, 1965, 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611. In fact, "so severely is the Board limited to the adjudication of statutory rights that it has no power to adjudicate contractual disputes. Sinclair Refining Co. v. N. L. R. B., 5 Cir. 1962, 306 F.2d 569, 576–578." Ibid. The Board has recognized this limitation on its authority. In Hyde's Super Market,[8] for example, a case quite similar to the one at bar, the Trial Examiner recom-

8. 1964, 145 N.L.R.B. 1252, enforced, 9 Cir. 1964, 339 F.2d 568.

mended that the Board order the company to "forthwith honor and comply with the provisions of the collective bargaining agreement. * * *" Id. at 1264. The Board struck the order to comply with the contract, stating that "the enforcement of a collective bargaining agreement is for the courts rather than the Board." Id. at 1253.

 This does not mean that remedies traditionally used by courts are unavailable to the Board. The Board has broad powers to fashion remedies to "effectuate the policies of th[e] Act". Labor-Management Relations Act, § 10 (c), 29 U.S.C. § 160(c). See Phelps Dodge Corp. v. NLRB, 1941, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271. So long as the remedy is reasonably related to the unfair labor practice found and will effectuate the policies of the Act, the mere fact that it coincides with a traditional judicial remedy is irrelevant. Cf. United Steelworkers of America, AFL–CIO v. American International Aluminum Co., supra.

 In this case the order that the Company pay back overtime and back welfare fund payments pursuant to the contract was reasonably tailored to remedy effectively the employer's violation of section 8(a) (5). A simple order to bargain in good faith would not be sufficient. To allow an employer unlawfully to repudiate a collective bargaining agreement at the small cost of being required, sometime in the future, to sit down and bargain with the union would encourage such violations of the Act. For the period from the breach until a new agreement, if any, is reached pursuant to the Board's bargaining order, the employer would be at liberty to disregard the terms of the contract.[9] The temptation to violate the Act in a situation where the employer would have everything to gain and nothing to lose could be overwhelming.

 These orders do not take the Board into the forbidden land of contract adjudication. Except within certain narrowly circumscribed areas, see NLRB v. C. & C. Plywood Corp., 1967, 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 487; NLRB v. Acme Indus. Co., 1967, 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495, the Board is not competent to *interpret* contract provisions. See Sinclair Refining Co. v. NLRB, 5 Cir. 1962, 306 F.2d 569. But it is competent to use unambiguous contract provisions to measure the employer's obligation to "recreate the conditions and relationships that would have been had there been no unfair labor practice". Schill Steel Prods. Co., NLRB, Nov. 4, 1966, 63 LRRM 1388, 1389. For example, the traditional measure of backpay awards is the contract wage rate. See Chemrock Corp., 1965, 151 N.L.R.B. 1074. The Board may order an employer to sign an agreement[10] or even to "honor" a contract. This distinction explains the *Hyde* decision that the Board may order the company to "honor" but may not order the company to "comply with" the contract. In the *Hyde* sense "compliance" means the act of carrying out the various provisions of the contract, and would require the Board to determine when performance was satisfactory. "Honor" means the respect due to a contract by a party to the contract, leaving disputes over the meaning of the contract's terms to a court or an arbitrator.[11] Here an order to honor the

9. While the Union may have an action under section 301 of the Act, 29 U.S.C. § 185, the purpose of the Board proceedings is to remedy violations of section 8, not to enforce private contractual rights.

10. NLRB v. Huttig Sash & Door Co., 4 Cir. 1966, 362 F.2d 217; NLRB v. Warrensburg Board & Paper Co., 2 Cir. 1965, 340 F.2d 920; NLRB v. Sunshine Mining Co., 9 Cir. 1940, 110 F.2d 780, cert. denied, 1941, 312 U.S. 678, 61 S.Ct. 447, 85 L.Ed.

1118; Schill Steel Prods. Co., supra; North Country Motors, Ltd., 1964, 146 N.L.R.B. 671; Cosmopolitan Studios, Inc., 1960, 127 N.L.R.B. 276, dismissed as moot as to this point, 2 Cir. 1961, 291 F.2d 110.

11. "In general, the Board has no power to adjudicate contractual disputes. See United Steelworkers of America, A.F.L.–C.I.O. v. American Internat'l Aluminum Corp., 5 Cir., 334 F.2d 147, 152. But where, as in this case, the breach of contract by re-

contract would place the parties back where they were before the breach.

Nor do the present orders plunge the Board into the thicket of contract interpretation. The overtime wage scale and the rate for payments into the union welfare fund are clear and unequivocal. There is no room for interpretation here. The Board was therefore competent to issue the orders in question. See NLRB v. Huttig Sash & Door Co., 4 Cir. 1966, 362 F.2d 568 (ordering the company to sign a contract and pay backpay to all employees at the rate the contract established).

(2) The Board's order is ambiguous in that it leaves unclear the duration of the Company's obligation under the reactivated contract and the extent of its obligation to pay back overtime and make back welfare fund payments for all [12] of its employees. Paragraph 2(c) of the order commands the Company to "reactivate, acknowledge the validity of, and abide by" the contract "until such contract expires or is terminated". But paragraph 2(f), specifying back overtime and welfare fund payments, contains no such time limitation.[13] This order would raise serious questions of the Board's authority if it were interpreted to require payments from the Company's breach of contract, past the expiration date of the contract two years ago,[14] to the present.

Although the Board may order an employer to take affirmative action to bind himself to a contract, it has not yet done so in the absence of agreement of the parties as to the terms of the contract. In the contract signing cases, for example, the Board will not order an employer to reduce to writing and sign an agreement unless the parties have in fact agreed on all terms. See Ridge Citrus Concentrate, Inc., 1961, 133 N.L.R.B. 1178 (disagreement as to duration of contract); Feed & Supply Center, Inc., 1960, 127 N.L.R.B. 788, enforced, 9 Cir. 1961, 294 F.2d 650 (health and welfare plan); North Carolina Furniture, Inc., 1958, 121 N.L.R.B. 41.

pudiation is an intrinsic part of the unfair labor practice of refusing to recognize and bargain with the duly constituted employee representative, the Board's jurisdiction, under section 10(c), includes the power to remedy that phase of the unfair labor practice. See Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126.

"In this case an appropriate remedy was to require the employer to recognize and bargain with the Union. Since the repudiation of the contract was based on the refusal to recognize and bargain with the Union, part of the appropriate remedy was to eradicate the repudiation by requiring the employer to 'honor' the contract. See H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 526, 61 S.Ct. 320, 85 L.Ed. 309.

"Read in this light, the word 'honor' has the limited role of placing the parties, with reference to the contract, back in the position which they occupied prior to the breach. It does not mean that specific performance was decreed as Hyde contends. Nor is it an adjudication as to the validity of any or all of the contract provisions." NLRB v. Hyde, 9 Cir. 1964, 339 F.2d 568, 573.

12. Back overtime pay in the cases of the two discharged employees may be justified under the traditional backpay remedy for violation of section 8(a) (3). This reasoning also applies to the welfare fund payments, as they may be considered wages.

13. (f) Reimburse all its employee boat operators who have worked overtime during the existence of the * * * contract * * * by paying each a sum he would have earned as overtime wages pursuant to the terms of said contract less any wages actually paid to him for such overtime work, with interest thereon * * *; and pay into the Seafarers' Welfare Plan such sums as would have been paid into said Plan absent the illegal changes in wages.

14. The Trial Examiner found, 153 N.L.R.B. at 1220, and we agree, that the contract expired March 1, 1965. Although the language of the first part of the termination and extension clause set forth above seems to indicate automatic renewal, the second part of the clause makes clear that a written agreement was necessary to extend the contract. There was no such written agreement. The union's 60-day notice cannot take the place of the required agreement.

Ordering compliance with an expired contract is much like ordering a party to sign a contract upon which full agreement has not been reached. At the very least, such an order disregards the parties' agreement concerning the duration of their commitment. And it certainly cannot be presumed that in changing economic circumstances the parties would agree on an identical renewal contract. Yet the cases dealing with the effect of a contract's expiration on the employer's duty to take affirmative action to remedy his prior violation of section 8(a) (5) have not been at all consistent. The Second Circuit alone has produced at least three cases coming to various results. In NLRB v. Cosmopolitan Studios, Inc., 2 Cir. 1961, 291 F.2d 110, for example, the Board had ordered the company to sign a written contract negotiated by an employer association from which Cosmopolitan had withdrawn. The contract expired before the court had reviewed the Board's action. The court said simply:

> We need not determine the validity of this portion of the Board's order, for the reason that the written contract which the Board directed the company to sign expired by its own terms on March 1, 1961. Therefore this portion of the Board's order has become "moot." Id. at 112.

Four years later, the court swung to the other extreme in NLRB v. Warrensburg Board & Paper Corp., 2 Cir. 1965, 340 F.2d 920. There the Board found that the company had violated section 8(a) (5) and ordered it to sign a contract with a union which admittedly represented a minority of the employees.[15] The contract would have expired even before argument in the court of appeals. The court, on its own motion, modified the Board's order, extending the contract until nine months after the court's decision. The court said:

> Were we merely to weigh the respective equities of the parties we might be inclined to deny enforcement of the Board's orders or, alternatively, to require that the Board conduct another representation election. * * * It would do violence to the Act, however, so to hold, for failure to enforce would encourage purposeful delay in other cases. Id. at 923.

Last year, on a petition for a temporary injunction under section 10(j) of the Act, 29 U.S.C. § 160(j), the District Court for the District of Connecticut refused to reinstate a contract which had expired by its own terms on the ground that to do so would be to rewrite the contract. Hoban v. United Aircraft Corp., August 5, 1966, 63 LRRM 2081.[16]

In this case we conclude that the expiration of the contract should mark the termination of the Company's obligation. The Light company has had a history of violent fluctuations in the volume of its business. During the term of the original contract, the Company found it necessary to negotiate temporary changes in the contract because of loss of business. Since then, it has all but gone out of business. In such a situation there is no reasonable probability that had the company respected its statutory duty to bargain with the union, the contract taking effect in 1965 would have contained terms similar to or more favorable to the employees than those of the old contract. An important object of the 8(a) (5) remedy is to "recreate the conditions and relationships that would have been had there been no unfair labor practice." Schill Steel Prods. Co., 63

---

15. The Board and the Court agreed that the Union's loss of majority status may have been the result of the employer's unfair labor practices.

16. See also Henry I. Siegel Co. v. NLRB, 2 Cir. 1965, 340 F.2d 309, where the court said: "There is still less merit in the claim that the expiration of the 1961 contract rendered the complaint moot. A party guilty of an unlawful refusal to bargain in connection with a particular contract does not become vested with immunity because the Board's processes have not been completed before the signature of a successor agreement." Id. at 311.

LRRM at 1389. If the Company had not breached the contract it would have paid overtime and made welfare fund payments through February 1965, at which time it would have bargained for a new contract with the Union.

We conclude that the Company should be ordered to pay back overtime and back welfare fund payments only through the expiration date of the contract—February 28, 1965.[17] Restoration of the status quo ante which the Act seeks requires no more.

The order of the Board is enforced to the extent indicated in this opinion.

17. The Board's order to reactivate and abide by the old contract was by its terms limited to the duration of the contract. Since the contract has expired, the question of enforcing this part of the order is moot.