LOCAL 1186, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 4, AFL–CIO v. CONNECTICUT STATE BOARD OF LABOR RELATIONS

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued November 6, 1969—decided January 15, 1970

*William S. Zeman*, for the appellant (plaintiff).

*Alphonse C. Jachimczyk*, assistant attorney general, with whom, on the brief, was *Robert K. Killian*, attorney general, for the appellee (defendant).

RYAN, J. This is an appeal by the plaintiff, hereinafter referred to as the union, from the judgment of the Superior Court dismissing its petition to vacate the dismissal by the defendant board of the union's amended complaint filed with the board alleging that the city of New Britain, as the municipal employer, had engaged in, and was engaging in, prohibited practices within the meaning of §§ 7-470 (a) (1), (4), and (5) of the General Statutes. On October 11, 1965, the city of New Britain entered into an agreement with the plaintiff union under the terms

of which it recognized the union as the sole and exclusive bargaining agent for the bargaining unit which consisted of certain employees in various departments of the city government enumerated in the agreement. On June 1, 1966, three employees of the water department, who were within the bargaining unit, filed grievances claiming that they were doing clerk-typist-II work but were classified as performing clerk-typist-I work. A reclassification to clerk-typist II was requested. The grievances were presented to an administrative accountant in the water department of the city who was their "immediate supervisor" and who was also a member of the plaintiff union. On June 1, 1966, he granted their requests for reclassification. On May 20, 1966, three employees in the office of the registrars of voters had filed identical grievances, requesting reclassification to clerk-typist II, which requests were granted by both registrars of voters on May 23, 1966. On June 14, 1966, the civil service commission of the city of New Britain denied all six grievances on the ground that the employees were "not working out of their classifications." Thereafter, the union filed notice of appeal and submitted the matters to the state board of mediation and arbitration, and a hearing was held by that board on August 30, 1966. At the request of the union, the hearing was discontinued on the representation of the union that it intended to file charges with the defendant labor relations board, claiming that the city of New Britain had engaged in, and was engaging in, prohibited practices under the Municipal Employee Relations Act. On November 7, 1966, an amended complaint was filed with the defendant board, alleging that the municipal employer was engaging in prohibited practices by repudiating the

settlement of the six grievances. After a hearing the defendant board rendered a decision dismissing the complaint for lack of jurisdiction.

The agreement between the city and the union contains, in §§ 12.0—12.6, a grievance procedure. Section 12.0 defines a "grievance" as "any dispute between the City and the employee concerning the interpretation or application of the terms of this agreement." A five-step grievance procedure is provided, under the terms of which the employee may in the first instance submit his grievance to his "immediate superior",[1] and, if he is not satisfied, he may appeal, in turn, to the "executive head of the department," to the "appointing authority" and finally to the "Personnel Director." If no satisfactory agreement is reached, the employee may file a notice of appeal to submit the matter to arbitration by the state board of mediation and arbitration, whose decision will be binding on both parties. See General Statutes § 7-472. There is no express provision in the agreement for an appeal by the city.

The basic claim of the union is that, under the terms of the agreement, upon the granting by the "immediate supervisors" of the requests for reclassification which were the subjects of the grievances submitted, the denial of such reclassification by the civil service commission acting through the personnel director and the refusal of the city to abide by the decisions of the immediate supervisors constituted prohibited practices under §§ 7-470 (a) (1), (4), and (5) of the General Statutes.[2] Section 14.1

---

[1] While the agreement uses the words "immediate superior" and the parties use the words "immediate supervisor", no distinction is claimed by either party.

[2] "Sec. 7-470. PROHIBITED ACTS OF EMPLOYERS AND EMPLOYEE ORGANIZATIONS. (a) Municipal employers or their representatives or agents are prohibited from: (1) Interfering, restraining or

of the agreement provides as follows: "The personnel rules adopted by the Civil Service Commission shall apply when not in conflict with the provisions of this Agreement." The city urged that reclassification may be procured only under the personnel rules which are applicable when not in conflict with the contract. As the defendant board indicated in its memorandum of decision, the only conflict claimed by the union is with the grievance procedure. This provides for arbitration, and the decision of the arbitrators is to be binding on both parties. The union followed this procedure and submitted to the state board of mediation and arbitration the question whether the city's action amounted to a breach of the agreement. There is nothing in the record before us to indicate that the city refused to arbitrate. On the contrary, there was a hearing before the board of mediation and arbitration in which the city participated. The hearing was discontinued at the request of the union before the conclusion of the arbitration in order to permit it to file a claim of prohibited practices with the defendant labor relations board. The union filed such a complaint with the defendant board, and the city then moved that the matter be dismissed for lack of jurisdiction on the ground that the issue involved is one of contract interpretation rather than prohibited practices. The board dismissed the union's complaint for want of jurisdiction.

coercing employees in the exercise of the rights guaranteed in section 7-468; . . . (4) refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit; (5) refusing to discuss grievances with the representatives of an employee organization designated as the exclusive representative in an appropriate unit in accordance with the provisions of said sections."

An appeal to this court from a judgment of the Superior Court rendered under the Municipal Employee Relations Act (General Statutes §§ 7-467—7-477) is to be taken and prosecuted in the same manner and form as is provided in other cases of appeal to this court. General Statutes §§ 7-471 (4) (D), 31-109 (c). The evidence which a party desires to present should be printed in an appendix to his brief in narrative form. *Bisogno* v. *Connecticut State Board of Labor Relations,* 150 Conn. 597, 600, 192 A.2d 550. The plaintiff presented in its appendix certain documents marked as exhibits. These consist of the amended complaint submitted to the defendant board, the written grievances containing the signatures of the immediate supervisors who granted the reclassifications, a letter from the personnel director denying these grievances, and a copy of the agreement between the union and the city. No testimony of any kind was contained therein. The defendant filed a very short appendix to its brief, and from this it appears that the executive vice-president of the union testified that the function of the civil service commission in the city of New Britain was to pass on all requests for upgrading and classification for city employees. There was evidence that the three grievants in the water department asked the civil service commission for reclassification but that their request was denied. The three grievants in the office of the registrars of voters attempted to get reclassification through the civil service commission, the common council, and, when unsuccessful, by filing grievances with the "immediate supervisor." The only evidence before the board indicated that reclassification was the function of the civil service commission alone.

The union's amended complaint alleged that the

city engaged in prohibited practices in violation of §§ 7-470 (a) (1), (4), and (5). The defendant board recognized at the outset that, in order to determine the question of jurisdiction, it would be necessary that evidence be presented, and the parties were given every opportunity to do so. The union's complaint was dismissed only after full consideration of the claims of the parties. There was no evidence that the municipality interfered with, restrained or coerced its employees from exercising their right to organize and to bargain collectively, or that it refused to bargain collectively and in good faith with the union. Nor was there any evidence that it refused to discuss grievances with the representatives of the union. The city has not repudiated the agreement as in *National Labor Relations Board* v. *Hyde,* 339 F.2d 568 (9th Cir.). Actually, it has participated in presenting the dispute to the state board of mediation and arbitration in accordance with the final step of the grievance procedure. This is a matter of contract interpretation which, so far as the record shows, is still pending before that board. The federal cases interpreting the National Labor Relations Act cited by the plaintiff union are inapposite on the facts of the present case, and no discussion of them is required. The judgment of the Superior Court dismissing the appeal from the defendant labor relations board cannot be disturbed.

There is no error.

In this opinion the other judges concurred.