**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**VALLEY DIE CAST CORPORATION, Respondent.**

No. 14598.

United States Court of Appeals Sixth Circuit.

May 23, 1962.

Samuel M. Singer, Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Russell Specter, Attys., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Walter Shapero, Detroit, Mich. (Lawrence A. Burns, Detroit, Mich., on the brief), for respondent.

Before MILLER, Chief Judge, CECIL, Circuit Judge, and DARR, District Judge.

DARR, District Judge.

A petition filed by the National Labor Relations Board (referred to as "Board") seeks enforcement of its order against respondent Valley Die Cast Corporation (referred to as "Valley") to cease and desist from certain practices alleged to be violative of sections 8(a) (1) and 8(a) (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1, 3) and to reinstate with back pay seventy-one former employees who were discharged in the fall of 1959.

During the crucial period herein considered, the respondent Valley was a corporation doing business in Detroit, Mich-

igan, engaged in the manufacture and sale of automotive die cast hardware and related products. Valley was engaged in commerce.

In September 1959 District Lodge No. 60, International Association of Machinists, AFL-CIO (referred to as "Union") started an organization campaign among the employees of Valley.

On September 22 the Union wrote Valley a letter claiming to represent a majority of employees and two days later filed a petition with the Board for certification as the bargaining representative.

The employees were called to meet on October 14 for the purpose of discussing the pending representation proceedings.

Pursuant to this call a meeting was had about 7:30 on the evening of October 14, which some thirty to thirty-five attended. On the afternoon before the meeting a number of employees in the die casting department were laid off as a result of a justifiable curtailment of operations. At the meeting there was a brief discussion of the representation proceeding before the Board. However, one woman worker had seen the layoff slips at the Valley plant just before she came to the meeting and had a tale to tell about this situation. The conclusion was jumped to by her and the others that Valley was laying off employees as a means of preventing Union organization and would evidently make further layoffs. In the midst of talk about layoffs, the employees began to make other complaints against Valley relative to lack of heat at working places, dirty rest rooms and a stopped-up drinking fountain. In the fervor of all this discussion someone made a motion that the employees go on strike, which was approved unanimously. Immediately the strike was on and picket lines set up in front of Valley's premises.

Not knowing about the strike and the picket lines and according to their practice, a Mr. DiNoto and a Mr. Christensen came to the plant on the first night of the strike, October 14, about 10:30 for the purpose of maintaining equipment and watching the premises. Also present at that time were two company officials, Mr. Polizzi and Mr. Torosian. The two maintenance men were not permitted to enter the plant even though they requested to do so and the company officials also made the same request. One picket, Randolph Yamin (Hank) was rather vehement in his position and the other members of the picket lines stood before the entrance door.

On the morning of October 15 Valley sent telegrams to forty-three of the striking employees discharging each of them upon the ground of failure to report to work without valid excuse. Similar telegrams were sent to seventeen additional strikers on October 16 and another to one more striker on October 17. On October 19 twelve more were sent substantially the same telegram.[1]

During the course of the strike Valley officials told the strikers who were on the picket lines, in effect, that they would not get their jobs back.

The Union had theretofore interposed a law suit against Valley in a state court concerning employees relations and Valley had filed a cross complaint. The Union proffered to terminate the strike on condition that Valley discontinue the state court proceedings. Valley's attorneys rejected this offer, stating that Valley desired to have the controversy settled by the court or by the Board or by both. It might be said that the state court had limited the picketing to six employees, which aggrieved the Union. On October 26 the Union agreed to call off the strike if Valley would put the strikers back to work and again Valley rejected, apparently on the same grounds as caused the rejection of the first offer. That evening, October 26, the strike was called off.

On the morning of October 27 several of the strikers made personal requests to be returned to work and were informed by a Valley official that no one

---

1. One employee was not reinstated and one employee received two telegrams.

would be returned to work who was on the picket lines or on strike.

■ Our review of the Board's order is confined to the objections made before it or before the Trial Examiner. 29 U.S.C.A. § 160(e).

The objections made before the Board are interposed here by respondent as reasons why the Board's order should not be enforced. The respondent assigns two reasons, in the form of questions and answers, the first being:

Were economic strikers entitled to reinstatement and back pay where they either did not individually seek reinstatement, or only asked for reinstatement to their former positions?

Respondent contends this question should be answered "No."

As heretofore noted only some six or seven of the employees, after abandonment of the strike, made unconditional application for reinstatement.

The Trial Examiner reported to the Board that Valley had made it explicit that it would not, under any circumstances, re-establish the employment relationship it had previously terminated. The Board adopted the Examiner's findings and concluded and ruled that it would have been futile for the remaining employees who did not make individual requests for reinstatement to have done so. Upon this ruling all seventy-one striking employees were directed to be reinstated with back pay.

It is noted that the respondent does not question the law on this subject, but contends that the Board's decision was not justified under the facts.[2]

■ We think that the proof of statements by Valley officials rejecting the application of employees who applied for reinstatement and other statements concerning re-employment constitute substantial evidence from which the Board could infer that it would have been futile for all employees to personally apply for reinstatement.

■ We are required to enforce the order of the Board if it is supported by substantial evidence on the record. 29 U.S.C.A. § 160(e).

The second part of the same question raises the contention that the employees who did apply for reinstatement made insufficient application.

It is argued that because the employees asked for "my job" or "my job back," they failed to make an unconditional request for reinstatement.

We think this is a natural way for an employee to make application for reinstatement and to hold otherwise would be quibbling.

To defeat enforcement of the order, respondent's second proposition is:

Were economic strikers entitled to reinstatement and back pay where they engaged in or condoned unprotected misconduct during the course of a strike?

Respondent contends this question should be answered "No."

The Trial Examiner was of the opinion that there was no misconduct of a serious nature and in his report recommended reinstatement of all the discharged employees. However, the Board saw fit to change this part of the Trial Examiner's report and declared that the conduct of Mr. Yamin, on the occasion of preventing the maintenance men from entering the building, in making threats saying, "Nobody is getting into this plant," and "The only way they are going to cross here is over my dead body," was sufficient to warrant denial of Yamin's reinstatement. The Board points out that Yamin was

---

2. It is assumed that the respondent felt it could not have successfully questioned the law. Actual application for reinstatement has been held not necessary to perfect employee's right to reinstatement and back pay where the employer's conduct made it plain that such application would be rejected. N. L. R. B. v. Lummus Co., 5 Cir., 210 F.2d 377, 381; N. L. R. B. v. Anchor Rome Mills, 5 Cir., 228 F.2d 775, 780; Piasecki Aircraft Corp. v. N. L. R. B., 3 Cir., 280 F.2d 575, 585, 590.

the only identified person in the picket lines at the time of this episode.

■ Misconduct of this type can only be charged against identified wrongdoers. The Board's action was in accord with the law. N. L. R. B. v. Deena Art~·~re, Inc., 198 F.2d 645, 652 (C.A. 6) cert. den. 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342; N. L. R. B. v. Mt. Clemens Pottery Co., 147 F.2d 262, 268 (C.A. 6); N. L. R. B. v. Ohio Calcium Co., 133 F.2d 721, 726 (C.A. 6).

In accordance with the foregoing, a decree will be entered granting enforcement of the Board's order.