**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MRAK COAL COMPANY, Inc., Respondent.**

**No. 18575.**

United States Court of Appeals
Ninth Circuit.

Sept. 9, 1963.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Robert A. Armstrong and Charles Henderson, Attys., N. L. R. B., Washington, D. C., for petitioner.

Burr, Boney & Pease and D. A. Burr, Anchorage, Alaska, for respondent.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This is a petition to enforce the Board's order based on a finding that respondent violated § 8(a) (1) and (3) of the Act,[1] by discharging one Gary Smart for his action as financial secretary of a union in removing August 2, 1961 the names of three foremen from the check-off list, as "nonmembers" of the said union. One of the three was Smart's boss, Wayne Kanack. The union was the collective bargaining representative of the company's empoyees, pursuant to a collective bargaining agreement.

The general counsel for the Board produced testimony that Kanack resented the removal of his name as a member, because it made him (Kanack) ineligible for participation in the union's welfare and pension fund. This was a particularly acute aggravation at that particular time, because Kanack's wife was about to have a child.

Smart, who had been operating a bucket loader for several days, was, on August 3, 1961, assigned by Kanack to manually dig a ditch. After some conversation, Smart threw a shovelful of dirt in Kanack's direction which "came close," but

---

1. Section 8(a) (1) and (3) of the Act (29 U.S.C. § 158(a) (1) and (3)), reads in pertinent part:

"8(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of their rights guaranteed in section 7;

* * * * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

missed Kanack. Kanack then fired Smart for "assault."

Was Smart fired because of his "assault" or because Kanack was angry with his loss of pension and welfare status, and wanted an excuse to fire Smart?

As is usual in these cases, the facts emphasized by the employer are entirely different than those emphasized on behalf of the union employee.[2]

■ Petitioning Board has reason for such emphasis. It need merely point to evidence supporting the conclusions and order. Bon Hennings Logging Company v. N. L. R. B., 9 Cir. 1962, 308 F.2d 548. Respondent seeks to avoid the rule of that case by suggesting it applies only where the record discloses "the grossest type of hostile, anti-union conduct on the part of the employer which admittedly preceded the discharge of the employee." We enunciated no such rule in Bon Hennings Logging Company v. N. L. R. B., supra. Instead we pointed out "[o]ur role in reviewing decisions of the Board is a limited one. We are confined to determinations of whether decisions are supported by substantial evidence *in records considered as a whole.*" Id. at 553.

■ Even were the employer's evidence uncontradicted as to his motive behind any certain action, the Board may, but need not, accept it; nor is it bound thereby. National Labor Relations Board v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962).

■ Nor can we accept the respondent's theory that proof or lack of proof of prior anti-union animus is *controlling.* Such a rule would automatically always insulate the *first* unfair labor practice charged against an employer. National Labor Relations Board v. Williams, 4 Cir. 1952, 195 F.2d 669, holds "the presence of an anti-union attitude and the absence of other valid reasons must necessarily lend strong weight to a finding of discrimination." This does not mean the presence or absence of such anti-union animus is controlling.

■ Respondent sets up another straw man in claiming it was prevented "from showing a complete lack of anti-union attitude and history on the part of respondent company," (Respondent's Brief, p. 13), citing the transcript, p. 115. That reference shows only that the hearing officer refused to permit respondent to prove that issue on cross-examination of petitioner's witnesses. That this is so is established by lines 16 and 17, where the trial examiner states: "However, if in your case you wish to establish that, all right." Then on the respondent's case, *over objection* by general counsel for petitioner, the respondent was permitted to

---

2. Merely as an example, without placing undue emphasis on the *value* of the testimony—(a) Petitioner emphasizes that Smart threw a shovelful of dirt, but that it missed Kanack. Respondent emphasizes that the dirt missed Kanack, but only because Kanack stepped aside.

(b) Petitioner emphasizes what Kanack said to Lloyd Hill (Tr. pp. 38, 39, 89); his threat to get even with Smart (Tr. p. 89); and what was said to Ernest Harris (Tr. p. 107). Respondent emphasizes that nothing was said between Kanack and Smart until Smart said: "I'd like to wrap this shovel around your head," (Tr. p. 164) and does not comment either on any remarks Kanack made to others, or what Kanack had allegedly previously said to Smart—that Kanack had a ditch for Smart to dig—that he had a lot more of this kind of work for Smart, that the 4' × 4' × 20' or 30' ditch was to be dug by hand "within a week." Respondent makes

no mention of Kanack's alleged statement made to Lloyd Hill, after the office conference, that Smart had discriminated against *him* (Kanack) by taking him off the union check-off list (Tr. pp. 48, 92, 93); of Kanack's crying, throwing his hard hat to the ground, admittedly becoming hysterical, speaking of his wife and baby, and stating he could put Smart back on the job, but would not do so until he (Kanack) was back on the welfare list (Tr. pp. 49, 93, 94).

(c) Respondent mentions that the excavation started by Smart "was in fact thereafter finished by fellow employees" (Brief, p. 16; erroneously citing R. 61, lines 12–14). Petitioner emphasizes the excavation was not completed seven months later, at the time of hearing (Tr. pp. 17, 18).

(d) Several other instances could be cited, if desirable to do so.

introduce into evidence all that it desired to offer on this question of anti-unionism. (Tr. p. 149, 189.)

█ Assuming, as we will here, that such testimony is always admissible under the theory expressed in National Labor Relations Board v. Williams, supra, we still find nothing in the record to support any claim of rejected evidence.

There is but one question here. Was there substantial evidence in the record, considered as a whole, to fairly support the decision of the Board? Universal Camera Corp. v. National Labor Relations Bd., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. We hold there was; therefore we agree with the Board's conclusion that Mrak Coal Company, Inc., was guilty of an unfair labor practice proscribed by the Act.

The Board's findings are affirmed. The petition of the Board for enforcement is granted, there being no objection made to the proposed enforcement, once the responsibility is established by proper findings.