NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PARK EDGE SHERIDAN MEATS, INC.,
et al., Respondents.

No. 10, Docket 28023.

United States Court of Appeals
Second Circuit.

Argued Oct. 1, 1963.

Decided Oct. 30, 1963.

Melvin Pollack, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Glen M. Bendixsen, Atty., Arnold Ordman, Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for petitioner.

Ludwig Teller, New York City, for respondents.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

The National Labor Relations Board here petitions for enforcement of its order of November 1, 1962, 139 NLRB No. 48, directed to the respondents, and based upon a finding that they violated §§ 8(a) (1), (2) and (3) of the National Labor Relations Act.

The Trial Examiner's findings of fact, which were adopted by the Board, were in substance as follows:

Respondents operate two large supermarkets several miles apart in the vicinity of Buffalo, New York. During 1960-61, Local 34, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO (Local 34), undertook to organize respondents' approximately 200 store employees, exclusive of truck drivers, office employees, and other special categories.

On June 5, 1961, approximately 50 employees at both stores struck to obtain recognition for Local 34 as the employees' exclusive bargaining representative. After a day of picketing, the respondents entered into an agreement providing for termination of the picketing, recognition of Local 34, and negotiations for a collective bargaining agreement.

Between June 5 and June 15 the respondents, through managers and other supervisory personnel, engaged in a series of acts designed, despite their recognition of Local 34, to influence the employees not to permit Local 34 to represent them. Employees were told that the work force as well as working hours would be reduced if the union were to prevail; one employee was interrogated as to his union allegiance, and another was warned that if the work force was to be reduced the respondents would favor those who maintained their allegiance to the respondents rather than the union.

During this same period the respondents attemped to persuade the employees to foresake Local 34 and join the Retail Clerks Union instead, or in the alternative to form a company union. One supervisor asked an employee to circulate a petition to revoke membership in Local 34. By June 15 the Retail Clerks had secured a sufficient number of representation cards to institute an election proceeding. The results of the election, however, were inconclusive, because of challenges made to both the votes of certain employees and to conduct affecting the outcome of the election.

On the morning of June 15 a strike was commenced at both markets. That evening a union meeting was held and many of the employees present voiced complaints concerning the harassment to which they were being subjected and the extent to which they were being pressured to join the Retail Clerks Union. The members agreed to stay out on strike.

Upon learning on June 22 that the election had been inconclusive, Local 34 held a meeting at which it was agreed that the striking employees would make an offer to return to their jobs. The following morning representatives of the strikers appeared at both markets and offered to return to work; these offers were rejected on the ground that the respondents had already hired permanent

replacements. The employees thereupon resumed the strike as well as the picketing of the two markets. On August 21, Local 34 reaffirmed the employees' offer to return in a letter to the respondents, and on August 31 a telegram was sent by the respondents to almost all of the striking employees requesting that they report for work on the morning of September 5.

On the basis of the foregoing findings, the Board concluded that the respondents had violated § 8(a) (1), (2) and (3) of the Act, in interfering with, restraining, and coercing the employees in the exercise of their rights under the Act; in rendering unlawful support and assistance to the Retail Clerks; and in discriminating with regard to the hire and tenure of employment of its employees, thereby discouraging membership in Local 34.

The Board directed that back pay be awarded to the striking employees commencing with June 24, on the ground that the June 15 strike had been induced by the respondents' unfair labor practices and that the strikers had made an unconditional offer to return to work on June 23. See Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956); N. L. R. B. v. Sunrise Lumber & Trim Corp., 241 F.2d 620 (2 Cir.), cert. denied, 355 U.S. 818, 78 S.Ct. 22, 2 L.Ed.2d 34 (1957). Respondent contends that these cases are inapposite, on the theory that its own grant of recognition to Local 34 was illegal since the union did not in fact represent a majority of the employees at the time the agreement was executed. Consequently, respondents argue, the measures they took between June 5 and June 15 did not constitute unfair labor practices inasmuch as they were defense measures taken against the consequences of the "illegal" grant of recognition, and therefore the June 15 strike was not induced by unfair labor practices, but rather was designed to enforce an illegal agreement.

■ We do not agree. Even assuming *arguendo* that Local 34 did not enjoy majority status on June 6, respondents' contentions must fail.[1] In International Ladies' Garment Workers' Union, AFL-CIO v. N. L. R. B., 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961), the Supreme Court held that a union and an employer commit unfair labor practices if in good faith they enter into an agreement in which the employer recognizes the union as an exclusive bargaining representative when in fact the union does not enjoy the support of a majority of the employees. But nowhere does the Court suggest that having once violated the Act the employer may then proceed to compound his error by committing further unlawful acts of influence, restraint, or coercion, designed to prevent his employees from exercising their rights freely to choose a representative. In such circumstances the employer may not bargain with the minority union, for to do so would impinge upon the free exercise of the employees' rights. For the very same reason, the employer may take no other actions which improperly discourage membership in that union or encourage membership in any other union.

■ The Board's findings of unfair labor practices are amply supported by the record. Extensive testimony before the Board established that the respondents committed various acts, detailed above, designed to influence or coerce the employees in their choice of a bargaining representative. Such acts are clearly proscribed by § 8(a) (1) of the Act. See, e. g., Bausch & Lomb Optical Co. v. N. L. R. B., 217 F.2d 575 (2 Cir. 1954);

1. We need not reach the question whether the union in fact enjoyed majority support on June 6, although the following circumstances tend to support a conclusion that it did: (1) approximately one-quarter of the employees joined the one-day strike on June 5; (2) approximately half of the employees struck on June 15, even after ten days of unfair labor practices directed at Local 34, and not merely the employees in general; (3) the union's claims at all times prior to the Board proceeding were unchallenged by the respondents; (4) the respondents did in fact enter into a recognition agreement.

N. L. R. B. v. Griggs Equipment, Inc., 307 F.2d 275 (5 Cir. 1962).

■ It is equally clear that respondents' attempt to influence the employees to join the Retail Clerks Union, or in the alternative to form a company union, constituted unlawful assistance to a labor organization as well as unlawful interference with the employees' rights to choose their own representative. See International Association of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50 (1940); N. L. R. B. v. Philamon Laboratories, Inc., 298 F.2d 176 (2 Cir.), cert. denied, 370 U.S. 919, 82 S.Ct. 1555, 8 L.Ed.2d 498 (1962).

■■ Respondents further urge that the back pay award was improper on the ground that the striking employees' offer to return to work—made on a busy Saturday morning—was designed to harass the respondents and cause confusion at their markets and therefore was not an effective unconditional offer to return to work. Although the evidence was in conflict regarding what took place that Saturday morning, there was substantial evidence in the record to support the Board's finding that the striking employees, through their representatives, made clear to the respondents their unconditional desire to return. If the respondents had requested the employees to defer their offer to return to a more appropriate time, perhaps Monday, the next working day, the request could not reasonably have been refused. However, it is significant that the respondents failed even to suggest that the time and circumstances were inappropriate for a discussion of reemployment but rather relied on the fact that all of the strikers had been permanently replaced. Where an employer has made clear his refusal to reinstate strikers each striker need not undertake the futile gesture of offering in person to return to work. E. g., N. L. R. B. v. Valley Die Cast Corp., 303 F.2d 64 (2 Cir. 1962); N. L. R. B. v. Lummus Co., 210 F.2d 377 (5 Cir. 1954).

■ Respondents failed to file specific exceptions to the Trial Examiner's conduct of the hearing and cannot do so for the first time on appeal. See § 10(e), National Labor Relations Act; Marshall Field & Co. v. N. L. R. B., 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744 (1943).

■■ Finally, there is ample evidence that respondents discriminated against employees Bauman and Carosi because of their union activity and that they improperly refused reinstatement to employees DiSarno, Ginett, Graham, Zunner, and Tracy. We·therefore grant enforcement of the Board's order. Issues regarding the extent of respondents' back pay liability are properly deferred to the compliance stage of Board proceedings. See N. L. R. B. v. Deena Artware, Inc., 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960). If the Board finds that some of the employees were unavailable for work or that jobs were unavailable for them, the back pay award should be computed accordingly. See N. L. R. B. v. Brown & Root, Inc., 203 F.2d 139, 147 (8 Cir. 1953).