**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**V. C. BRITTON CO., Respondent.**

No. 19082.

United States Court of Appeals Ninth Circuit.

Nov. 1, 1965.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stephen B. Goldberg, Atty., N. L. R. B., Washington D. C., for petitioner.

Nathan R. Berke, George Brunn, Severson, Zang, Werson, Berke & Larson, San Francisco, Cal., for respondent.

Before CHAMBERS, HAMLIN and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge:

In this labor case, we deal with a step in the transmigration of agriculture to industry. The former is exempt [1] from the Labor Management Relations Act, 29 U.S.C. § 141 et seq. The latter is not.

The Britton Co. gathers alfalfa hay at Firebaugh, located near Fresno, California, adds other things to it and produces alfalfa pellets, a feed. It is not disputed that this processing here comes under industry and interstate commerce and is thus subject to the act.

With this shift from agriculture to industry, the unionization of employers and unorganized labor produced convulsions. There is not the self discipline on either side that accompanies a long-established relationship.

The Agricultural Workers Organizing Committee, AFL-CIO, won a representation election on May 16, 1962. We take it that this covered all those (other than supervisors) engaged in the processing and manufacturing of alfalfa pellets.

After charges were filed, a trial examiner and the board found the Britton Co. had interfered with, restrained and coerced its employees in the exercise of their rights under Section 7 [2] of the act, thus setting up a violation of Section 8 (a) (1).[3] Further, it was found that the discharge of a truck driver, George Gonzales, was a violation of Section 8(a) (3) [4] of the act: that he was discharged for union activities.

As to the violation of Section 8(a) (1), we are prepared to enforce the order. The evidence on this charge was hotly disputed. We think under Universal Camera v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, we must accept the board's findings even though a reading of the transcript leaves some doubts in our mind.

There was testimony tending to show anti-union activity from March, 1962, to September, 1962. The board believed inter alia, that:

1. A superintendent told two employees that anyone having anything to do with the union would be fired;

2. A superintendent told a group of employees that their work time (and therefore pay) would be cut if the union came;

3. The office manager suggested to an employee that the plant might close down (as a matter of principle) if the union won;

4. A supervisor threatened an employee with higher rent if the union prevailed;

5. The company encouraged employees to sign a petition to repudiate the union.

---

1. See 29 U.S.C. § 152(3).

2. 29 U.S.C. § 157.

3. 29 U.S.C. § 158(a) (1).

4. 29 U.S.C. § 158(a) (3).

The foregoing list is not complete, but suffice it to say, if believed, citations are not necessary to prove violations of the act.

As to the discharge of Gonzales, we are just not satisfied that the burden of proof was sustained that Gonzales was discharged because of union activity. While we see a picture of mutual roughness in the field, still from Gonzales' own testimony we find him a disturbing force. It may be that a new feeling of security emboldened him to do things he would not have done before, but that should not shield him from justified discharge. As to Gonzales, we believe the situation is comparable to that of the discharged employees in Salinas Valley Broadcasting Corp. v. N. L. R. B., 9 Cir., 334 F.2d 604.

The board's decision will be enforced by decree as to the Section 8(a) (1) violation, but not as to Gonzales.