**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AMBROSE DISTRIBUTING COMPANY, Respondent.**

No. 20200.

United States Court of Appeals Ninth Circuit.

March 9, 1966.

Rehearing Denied April 26, 1966.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Vivian Asplund, Attys., N. L. R. B., Washington, D. C., James Paras, N. L. R. B., San Francisco, Cal., for petitioner.

Eli A. Weston, of Weston & Weston, Boise, Idaho, for respondent.

Before POPE, JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge.

This case is before the court on the petition of the National Labor Relations Board (hereinafter the "Board"), for enforcement of its order issued against respondent pursuant to § 10(e) of the National Labor Relations Act, as amended, [29 U.S.C., § 151 et seq.] The Board's decision and order are reported at 150 NLRB No. 157. This Court has jurisdiction of the proceedings under § 10(e) of the Act.

The Board found, upon charges filed by General Teamsters, Warehousemen, Chauffeurs & Helpers Union, Local No. 483, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (Independant), (hereinafter the "Union"), that respondent violated § 8(a) (1) of the Act by interrogating and threatening employees concerning their Union activities and promising them benefits for refraining from such activities. The Board also found that respondent violated § 8(a) (3) and (1) of the Act by discharging two employees to discourage union activities.

Respondent is engaged in the wholesale distribution of meat and petroleum products, and operates as a private carrier by truck. It employs approximately thirty-eight truck drivers working out of respondent's terminal at Wendell, Idaho.

In September, 1963, Richard Byrd, employed by respondent as a truck driver, joined the union. Thereafter, until mid November, he solicited other drivers to do likewise. On December 12, 1963, the union filed a representation petition and on February 18, 1964, the Board conducted an election which the union lost.

On March 11, 1964, Byrd's employment was terminated by the respondent. The other discharged employee was Thomas L. Smith, a truck driver, who signed an authorization card for representation by the union in the early part of November, 1963. He was discharged on March 21, 1964.

The conclusions of the Trial Examiner that the respondent interfered with, restrained and coerced employees in the exercise of their rights guaranteed under § 7 of the Act, and engaged in unfair labor practices within the meaning of § 8(a) (1) of the Act, are based on findings of fact made by the Trial Examiner concerning statements and interrogations made by A. N. Ambrose, the owner of respondent, and Nolan G. Cooper, a supervisory employee of respondent whose position was that of "partly manager and dispatcher." Such statements and interrogations included such as these: "Now, whatever you fellows do, don't vote for the union"; that respondent had been thinking for some time about establishing a fund for permanent employees, and, although he could not promise to do so, he was considering instituting such plan should the Union be defeated; respondent was going to stop operating the trucks for a period of two weeks until the election was over; that if the Union won the election, respondent would reduce its operations so that not more than five trucks would be kept running; that respondent had a list of fifteen drivers he thought voted for the Union; that those on the list would be "sent down the road."

The conclusions of the Trial Examiner that in discharging Byrd and Smith, respondent discriminated in regard to their tenure of employment to discourage membership in and activity on behalf of the Union, and thereby engaged in unfair labor practices within the meaning of § 8(a) (3) and (1) of the Act, were based upon findings of fact made by the referee as to statements and interrogations made by Ambrose to Byrd and Smith. Cooper accused Byrd of being the instigator of "this Union business." Ambrose cautioned another employee "Be careful what you say, Byrd is going to be the new shop steward in the Union." Ambrose told Smith that he could not understand why Byrd was for the Union considering the help he had given Byrd in the past. Cooper criticized Byrd for stirring up trouble and for reporting to an investigating board agent what Cooper had said to Byrd about the Union. Ambrose accused Smith of causing trouble and referred to the "Union deal."

Respondent opposes enforcement of the Board's orders on the ground that the conclusions of the Board that the respondent violated the stated provisions of the Act are not supported by substantial evidence. It is respondent's position that the statements of Ambrose and Cooper opposing unionization of respondent's employees was nothing more than an exercise by an employer of his right to freedom of speech and to inform employees that the employer is not in favor of labor organizations.

With respect to the discharges of Smith and Byrd, respondent contends that Byrd was discharged because of carelessness in the operation of respondent's trucks and for insubordination; and that Smith was discharged because of the poor character of his work; improperly using company money; failing to make a written report of a chargeable accident; making false statements concerning his physical condition and seeking other employment when his services were needed by the respondent.

We have carefully reviewed the entire transcript of testimony taken before the Trial Examiner. Much of the testimony produced by the Government's counsel was uncontradicted. In instances where conflicts exist we note that the Trial Examiner consistently discredited the testimony of the respondent. The Trial Examiner, among other findings, found:

"[T]hat by suggesting the possibility of bonus payments if employees would reject the Union, by saying that trucks might be sold and some operations curtailed should the Union be chosen, by saying that Union supporters would be 'sent down the road,' and in this context questioning employees about their interest or membership in the Union, the Respondent interfered with, restrained and coerced employees in the exercise of rights guaranteed in Section 7 of the Act, and I find, engaged in

unfair labor practices within the meaning of Section 8(a) (1) of the Act.

"I find that Byrd was discharged because the Respondent correctly believed him to be a leader among the employees in the movement to establish the Union as bargaining representative. The asserted reason, a damaged trailer, was but a pretext. The discharge of Smith came about because of the Respondent's fear that failure to take this action might strip from the discharge of Byrd the mantle of legality with which the Respondent had sought to clothe it. I find that in the discharges of Byrd and Smith the Respondent was motivated by a desire to rid itself of one who had prominently supported the Union. The Respondent thereby discriminated in regard to their tenure of employment to discourage membership in and activity in behalf of the Union and has thereby engaged in unfair labor practices within the meaning of Section 8(a) (3) and (1) of the Act." [Footnote omitted.]

It is our view that on the record as a whole such findings are supported by substantial evidence.

The Board's petition for enforcement is granted.