**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LUISI TRUCK LINES, Respondent.**

**No. 21554.**

United States Court of Appeals Ninth Circuit.

Oct. 27, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixson, Atty., N.L. R.B., Washington, D. C., Thomas P. Graham, Jr., Director, N.L.R.B., Seattle, Wash., for appellant.

Velikanje, Moore & Countryman, Richard R. Greiner, Morris G. Shore, Yakima, Wash., Vance, Davies, Roberts & Bettis, Seattle, Wash., for appellee.

Before HAMLIN, BROWNING and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge:

The National Labor Relations Board petitions this court pursuant to section 10(e) of the National Labor Relations Act (29 U.S.C. § 160(e)) for enforcement of its order issued on August 15, 1966 (reported at 160 NLRB No. 45), against respondent Luisi Truck Lines. The Board found that respondent had violated section 8(a) (1) by making co-ercive statements against the union, and section 8(a) (5) of the Act by refusing to bargain collectively with a representative of its employees.

Respondent, who is engaged in the business of agricultural trucking, has two terminals, one in Yakima, Washington, and the other in Milton-Freewater, Oregon. It also does some business out of Walla Walla, Washington, but the record is unclear as to the details of that operation. The business is a seasonal one, and thus the number of employee-truck drivers fluctuates considerably during any one year.

On Sunday, October 25, 1964, a group of the respondent's drivers from the Yakima terminal met with Owen Ballinger, a representative of the local Teamsters Union (Local 524). At that meeting six employees signed representation cards authorizing the Teamsters to be their bargaining representative. A seventh employee, who was not present at the meeting, signed a card the following morning. On Monday, October 26, 1964, a telegram was sent by the Teamsters to the Yakima terminal. The telegram read:

THIS TELEGRAM IS TO ADVISE YOU THAT TEAMSTERS, CHAUFFERS [sic], WAREHOUSEMEN AND HELPERS UNION LOCAL # 524 HAS BEEN FESIGNATED [sic] AS THE EXCLUSIVE BARGAINING REPRESENTATIVE BY A MAJORITY OF YOUR EMPLOYEES IN THE FOLLOWING DESCRIBED COLLECTIVE BARGAINING UNIT. ALL TRUCK DRIVERS HELPERS AND MAINTENANCE EMPLOYEES. WE ARE PREPARED TO MEET WITH YOU AT YOUR OFFICE ON WEDNESDAY, OCTOBER 28TH AT 10 AM. AT THAT TIME WE WILL PROVE THAT WE REPRESENT A MAJORITY OF YOUR EMPLOYEES

F H WEHDE SECY TREAS TEAMSTERS UNION LOCAL 524

Two days after receipt of this telegram respondent, through its attorney, sent

Wehde a letter calling for an election supervised by the NLRB. The relevant portion of the letter read:

"We feel that there are some serious questions as to your majority representation, the appropriate unit and the employees who would be included within the unit, and believe that these can best be resolved through the National Labor Relations Board."

The record contains testimony supporting the following statements. During the several weeks following the receipt of the telegram and prior to the election, the president and the foreman of respondent company made statements to and asked questions of the employees concerning the union. The foreman told one group of employees that if they all were going to go union, the company would have to get itself a new crew of drivers. He told another employee that he had to know who was going to vote for the union, because those who voted for the union would be out of a job, but that those who voted against the union had a job. He also promised this employee that if he voted against the union, he could have his pick of available jobs and trucks. The president of the company told one employee that if the men "push this union thing too hard he would close the Yakima terminal and move to Oregon." He said the same thing to another employee, adding also that he would delay things in the court for at least two years. He also expressed to an employee the idea that those who voted for the union would be out of a job and that those who voted against would be kept on the payroll. Both the foreman and the president asked various employees to "name names" of those who had been "up to the union."

The election was held, and the union failed to receive a majority.[1] The union then filed a charge with the NLRB against the respondent alleging unfair labor practices in violation of sections 8 (a) (1) and 8(a) (5). The Trial Examiner found such violations to exist, and the Board adopted the findings of the Trial Examiner. The Board ordered the respondent to enter into collective bargaining negotiations with the Teamsters and to post appropriate notices, and has now appealed to this court for enforcement of that order.

## I. DID THE BOARD PROPERLY FIND A VIOLATION OF SECTION 8(a)(1)?

It is well established that this section prohibits the use of coercion by the employer to influence the outcome of a representation election. Threats of reprisal for union support are clearly coercive and thus violative of section 8(a)(1). NLRB v. Ambrose Distributing Co., 358 F.2d 319, 320–321 (9th Cir. 1966); NLRB v. V. C. Britton Co., 352 F.2d 797 (9th Cir. 1965); NLRB v. Winn-Dixie Stores, Inc., 341 F.2d 750 (6th Cir. 1965). Likewise, promises of benefits from voting against the union are prohibited. See, e.g., NLRB v. Parma Water Lifter Co., 211 F.2d 258, 262 (9th Cir. 1954). The parties here agree that if the statements attributed to the president and foreman of respondent company were in fact made, there was a violation of section 8(a)(1). Respondent asserts that the statements were never made, and that it was clear error for the Trial Examiner to find that they had been made.

There was a conflict in the testimony concerning the statements. Three employees testified that they had been made. The president and the foreman denied ever having made them. The Trial Examiner resolved this conflict by expressly finding the employees' testimony to be more credible than that of the president and foreman.

---

1. The union filed objections to the election alleging further misconduct on the part of the company which restrained employees in their selection or rejection of the union. The Board's Regional Director upheld the union's objections and set aside the mail-ballot election. However, he did not order a new election because of the pending litigation of unfair labor practices charged in the instant case.

We must give great weight to the credibility findings of the Trial Examiner. NLRB v. Local 776, IATSE (Film Editors), 303 F.2d 513, 518 (9th Cir. 1962), cert. denied, 371 U.S. 826, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962). "This court does not sit to parrot the Board's conclusions; but neither does it sit to judge the credibility of witnesses * * * or dispute the Board's choice between two fairly conflicting views although this court might justifiably make a different choice were the matter before it de novo." NLRB v. Stanislaus Implement & Hardware Co., 226 F.2d 377, 381 (9th Cir. 1955). This is not to say that we are irrevocably bound by the credibility determinations of the Trial Examiner, but rather that his findings shouldn't be disturbed unless a clear preponderance of all the relevant evidence convinces that they are incorrect. We have examined the record and have not found ample reason for reversing the credibility finding.[2] We therefore affirm the Board's findings of a violation of section 8(a)(1).

## II. WAS RESPONDENT'S REFUSAL TO BARGAIN AN UNFAIR LABOR PRACTICE?

The Board found that at the time of the request to bargain (the sending of the telegram), the union had valid representation cards from a majority of the employees at the Yakima terminal, and that respondent's refusal to bargain was not motivated by good faith doubt as to the union's majority status. Respondent challenges this finding on three grounds: (1) The employees of the Yakima terminal did not constitute an appropriate bargaining unit; (2) There was insufficient proof to show that the union had a majority of that bargaining unit; (3) The refusal to bargain was made in good faith doubt as to the majority status of the union and the appropriateness of the bargaining unit. We find little merit in these arguments.

The Board's determination that the Yakima terminal was an appropriate bargaining unit was made upon substantial evidence. While the Board's conclusions in this area are not absolutely binding, they should be given great weight and not be overturned unless they are clearly arbitrary and capricious. See NLRB v. Merner Lumber & Hardware Co., 345 F.2d 770 (9th Cir. 1965). There is nothing in the record to indicate that the Board's determination was arbitrary or capricious. The Yakima terminal is a separate and distinct operation, there is very little interchange of employees between Yakima and the terminal at Milton-Freewater, and there had been no prior history of collective bargaining at either of the terminals.

The Board found that this unit was made up of ten employees at the time of the offer to bargain. This finding is undisputed. Respondent disputes the Board's finding that the union had a majority of this unit. However, we find that there is substantial evidence in the record to support the Board's determination that the union had representation cards from seven of the ten employees at the time it requested recognition.[3]

Respondent's final argument is that its refusal to bargain was made because of a good faith doubt as to the union's majority status. It is a well-established rule that good faith doubt will excuse an employer's failure to recognize and bargain with a union. NL

---

2. There were a few minor discrepancies in the testimony of the three employees as to the time certain statements were made, and also as to the exact sequence of events. However, we are convinced that these mistakes were expectable failures of absolute recollection, and that they did not reasonably discredit the testimony that the statements were in fact made.

3. There was testimony by four of the seven employees who signed cards to the effect that the cards were valid. There is nothing in the record to indicate that there was any irregularity in connection with the other three cards. We reject respondent's argument that it is necessary to have all signatories testify in order to establish a union majority.

RB v. Security Plating Co., 356 F.2d 725, 727 (9th Cir. 1966); NLRB v. Hyde, 339 F.2d 568, 570 n. 1 (9th Cir. 1964); Snow v. NLRB, 308 F.2d 687, 691 (9th Cir. 1962); NLRB v. Trimfit of California, Inc., 211 F.2d 206, 209 (9th Cir. 1954). However, we think that the evidence here supports the Board's finding that the refusal was not made in good faith. Even if respondent had some doubts as to the majority status of the union,[4] its entering upon an unlawful course of conduct in violation of section 8(a) (1) and clearly directed at undermining whatever support the union had, as well as its failure to accept the union's offer of proof of its majority status, indicates that such doubt, if any, was not the key motivating factor in its refusal to bargain. To the extent that respondent had any good faith doubts it apparently was not anxious to resolve them until such time as it could be sure that no matter what the proper unit was the union would not have a majority. As this court has stated, "The refusal [to bargain] may not be motivated by a desire to forestall collective bargaining and provide an opportunity to undermine the union's majority status and rid the company of the union." NLRB v. Security Plating Co., supra, 356 F.2d at 727; NLRB v. Idaho Electric Co., 9th Cir., 384 F.2d 697, October 10, 1967; Jas. H. Matthews & Co. v. NLRB, 354 F. 2d 432, 439 (8th Cir. 1965).

### III. WAS THE REMEDY APPROPRIATE?

The Board has ordered respondent to bargain with the union as the exclusive representative of its employees. Respondent contends that this remedy is inappropriate and that a new election should have been ordered.

The Board has wide discretion "to determine how the effect of prior unfair labor practices may be expunged." International Ass'n of Machinists, etc. v. NLRB, 311 U.S. 72, 82, 61 S.Ct. 83, 89, 85 L.Ed. 50 (1941). The relationship of remedy to policy is peculiarly a matter of administrative competence. NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 349, 73 S.Ct. 287, 97 L.Ed. 377 (1953); Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194, 61 S. Ct. 845, 85 L.Ed. 1271 (1941). In this case there is nothing to indicate that the Board has acted outside its proper authority in issuing a bargaining order. It is well established that a bargaining order may be the proper remedy for a refusal to bargain. Franks Bros. Co. v. NLRB, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); Master Transmission Rebuilding Corp. v. NLRB, 373 F.2d 402 (9th Cir. 1967); Sakrete of Northern California, Inc. v. NLRB, 332 F.2d 902, 909 (9th Cir. 1964), cert. denied, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556; NLRB v. Geigy Co., 211 F.2d 553, 557–559 (9th Cir. 1954); NLRB v. Andrew Jergens Co., 175 F.2d 130 (9th Cir. 1949). Were it otherwise, "recalcitrant employers might be able by continued opposition to union membership indefinitely to postpone performance of their statutory obligation." Franks Bros. Co. v. NLRB, supra, 321 U.S. at 705, 64 S.Ct. at 819.

Respondent argues that the bargaining order is punitive rather than remedial since it contends that at the present time there is only one employee who was employed at the time of the refusal to bargain.[5] We disagree. Had

---

4. Respondent asserts that he was entitled to refuse to bargain because he thought the telegram referred to all of his employees, and not just those at Yakima. There is substantial evidence to support the Board's finding that respondent knew that the offer applied only to Yakima: The telegram was sent by someone known by respondent to be an official of the Yakima local; the telegram was sent to the Yakima terminal notwithstanding the fact that the main offices of the company were in Milton-Freewater; the company's president came to Yakima as soon as he could after receipt of the telegram.

5. Respondent has moved this court to adduce additional evidence. This evidence relates to the turnover in employees and is for the purpose of showing that the

the respondent recognized the union at the time they represented a majority, they would be the bargaining representative of the present employees. Nor are section 7 rights of the present employees usurped by the bargaining order in that they will have an opportunity to express their will as to their bargaining agent at a future time. As this court stated in a similar case:

"No injustice is done petitioner's employees, however, in view of the fact that the board's order does not establish the union as the employees' permanent representative. * * * After the union has had a reasonable time in which to establish itself petitioner's employees will have a procedure whereby they can establish that they prefer representation other than that of the union." Sakrete of Northern California, Inc. v. NLRB, supra, 332 F.2d at 909.

The Board did not err in ordering the respondent to bargain collectively with the union. The Board's order is affirmed and a decree will issue enforcing it.

bargaining order should not issue. Because of our determination that the bargaining order is proper, and relying on our decision in NLRB v. Geigy Co., 211 F. 2d 553, 557–558 (9th Cir. 1954), the motion is denied.