**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MILLER REDWOOD COMPANY, Respondent.**

**No. 22573.**

United States Court of Appeals
Ninth Circuit.

Feb. 25, 1969.

Herbert Fishgold, Washington, D. C. (argued), Janet Kohn, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Roy O. Hoffman, N. L. R. B., San Francisco, Cal., for petitioner.

Carrell F. Bradley (argued), of Schwenn, Bradley & Batchelor, Hillsboro, Or., for respondent.

Before MADDEN,* Judge of the Court of Claims, and CHAMBERS and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

This case comes before us upon petition of the National Labor Relations Board, pursuant to Sec. 10(e) of the National Labor Relations Act, (hereafter the Act) as amended, [61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.] for enforcement of its order issued against respondent on May 5, 1967. The Board's decision and order are reported in 164 N.L.R.B. No. 52.

The Board found that respondent, (hereafter the Company), (1) violated Sec. 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1) by interrogations, threats, promises, grants of benefits, and creating the impression of surveillance of employees' organizational activities; and (2) violated Sec. 8(a) (3) and (1) of the Act, 29 U.S.C. § 158(a) (3) and (1), by discharging employee Jerry Davis. The real question in the case is whether the evidence in the record supports the findings of the Board.

*The Sec. 8(a) (1) Violation*

In April of 1965, the union started its organization activities and on July 16, 1965, employee Jerry Davis was discharged.[1]

* J. Warren Madden, Senior Judge, United States Court of Claims, sitting by designation.

1. Leroy Roberts, another employee was discharged on July 15. However, the Examiner and the Board found that the

■ A review of the evidence shows that there was substantial evidence to support the Board's finding of a violation of Sec. 8(a) (1), 29 U.S.C. § 158(a) (1). There was interrogation of employees about their union sympathies, NLRB v. Luisi Truck Lines, 384 F.2d 842, 845 (9 Cir. 1967); NLRB v. Security Plating Co., 356 F.2d 725, 728 (9 Cir. 1966). Threats of reprisals for Union activities were shown, NLRB v. Ambrose Distributing Co., 358 F.2d 319, 320–321 (9 Cir. 1966), cert. denied 385 U.S. 838, 87 S.Ct. 86, 17 L.Ed.2d 72; NLRB v. Kit Mfg. Co., 292 F.2d 686, 690 (9 Cir. 1961); NLRB v. Sebastopol Apple Growers Union, 269 F.2d 705, 708 (9 Cir. 1959).

■ In addition, there was substantial evidence that the general manager of the Company created the impression that the employees' union activities were under surveillance. The Board concluded that such activities which lead the employees to believe that their employer is keeping their union activities under surveillance, coerced or restrained the employees in violation of Sec. 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1). N. L. R. B. v. Security Plating Co., Inc., 356 F.2d 725, 728 (9 Cir. 1966); Hendrix Mfg. Co., Inc. v. N. L. R. B., 321 F.2d 100 at 104 n. 7 (5 Cir. 1963); N. L. R. B. v. Prince Macaroni Mfg. Co., 329 F.2d 803, 805–806 (1 Cir. 1964); N. L. R. B. v. S & H Grossinger's, Inc., 372 F.2d 26, 28 (2 Cir. 1967).

■■ In addition there was substantial evidence that the company attempted to under cut the union's campaign by promises and grants of economic benefits. Such promises of benefits during an election campaign, seeking to demonstrate to the employees that they could have their wants satisfied without a union, are clearly a violation of Section 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1). N. L. R. B. v. Security Plating Co., supra, 356 F.2d at 728 (9 Cir.); N. L. R. B. v. Kit Mfg., supra, 292 F.2d at 690 (9 Cir.). The conferring of economic

benefits in order to inhibit employee support of a union violates Section 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1). N. L. R. B. v. Exchange Parts Co., 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964); J. C. Penney Co., Inc. v. N. L. R. B., 384 F.2d 479, 485 (10 Cir. 1967); American Sanitary Products Co. v. N. L. R. B., 382 F.2d 53, 57–58 (10 Cir. 1967); Betts Baking Co. v. N. L. R. B., 380 F.2d 199, 203 (10 Cir. 1967); N. L. R. B. v. Yokell, 387 F.2d 751, 755–756 (2 Cir. 1967).

We conclude that the order of the Board, based on the violation of Sec. 8(a) (1), 29 U.S.C. § 158(a) (1), should be enforced.

## The Section 8(a) (3) and (1) Violation

As to Jerry Davis, the discharged employee, there was substantial evidence that the company attempted to influence Davis, who was a union adherent. This is part of the record supporting the Sec. 8(a) (1), 29 U.S.C. § 158(a) (1), violation. There was evidence that from Davis' first employment with the company in October 1964 he progressed rapidly from a laborer to a "jump roll" operator at $2.41 per hour, to a "pony edger" in February 1965 at $2.56 per hour, to an operator of a gang trim saw on March 1, 1965 at $2.76 per hour. In mid May 1965 his wage increased to $2.91 per hour and a month later, as the result of a blanket wage increase, his rate became $2.97 per hour.

Until just before his discharge he was considered by his supervisor a capable employee. In early July he was given extra work during a vacation period, at his request. A supervisor told him the vacation work was given to "key men."

Davis returned from vacation on July 12, 1965 and was given the job of "gang edger." However he was not immediately assigned to the new job and on July 16, 1965 the date of his discharge, was still operating the trim saw.

discharge was not motivated by any union considerations. No question concerning that discharge is raised on this appeal.

On July 16, 1965 he was discharged and given the reason he had been a "big problem" and that he "talked too much."

At the hearing before the Examiner the company offered proof that two supervisors had observed Davis deliberately "slash" and destroy lumber on or about July 16, 1965 while observing him from a catwalk 30 feet above the ground and 80 feet to one side of the operation of the saw. The Examiner did not credit this testimony by either supervisor but "did not doubt" that Hartwig, one supervisor, was convinced that Davis blew the whistle too often (to temporarily shut down the saw) and was careless in getting lugs out of line.

The Examiner found "it seems unlikely that Davis would deliberately do anything to make the lugs out of alignment but I am convinced Connor (the other supervisor) thought he was guilty of doing so." The Examiner was "unable to conclude * * * just what moved Connor to take the discharge action," but recommended that "the allegation of unlawful discharge as to Davis be dismissed."

■ The Board found Davis was discharged because of his unionism. The fact that the Board disagreed with the Examiner's ultimate conclusion as to Davis does not detract from the substantiality of the support for the Board's result. The Examiner's resolution of conflicting testimony was not disturbed. The disagreement related solely to the inferences to be drawn from the whole record and the proper application of the statute. In such a case, "the presumptively broader gauge and experience of members of the Board have a meaningful role." Oil, Chemical & Atomic Workers Int'l Union, Local 4243 v. N. L. R. B., 124 U.S.App.D.C. 113, 362 F.2d 943, 946 (D.C.Cir. 1966). Accord: F. C. C. v. Allentown Broadcasting Corp., 349 U.S. 358, 364, 75 S.Ct. 855, 99 L.Ed. 1147 (1955); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Cheney California Lumber Co. v. N. L. R. B., 319 F.2d 375, 377 (9 Cir. 1963).

■■ The determination to be made in cases like this is one of fact, i. e. what was the *actual motive* of the discharge. Shattuck Denn Mining Corp. v. NLRB, 362 F.2d 466, 470 (9 Cir. 1966). The Board may rely on circumstantial as well as direct evidence and its inference and finding on motivation must prevail where it is reasonable and supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456 (1951); Accord, Shattuck Denn Mining Corp., supra, 362 F.2d 466 at 470; NLRB v. Mrak Coal Co., 322 F.2d 311, 313, 314 (9 Cir. 1963); Bon Hennings Logging Co. v. NLRB, 308 F. 2d 548, 553–554 (9 Cir. 1962).

■ A reviewing court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962); Universal Camera Corp. v. NLRB, (1951) supra, 340 U.S. at 488, 71 S.Ct. 456; Accord: Shattuck Denn Mining Corp., supra, 362 F.2d at 469–470.

■ Judge Barnes recently wrote for this court in NLRB v. Holly Bra of Calif. Inc., 405 F.2d 871 (9 Cir. 1969) "The fact that the Board's choice is one of two conflicting alternatives and that evidence and inferences exist to support the rejected choice is not a sufficient ground for refusing to order enforcement. NLRB v. Certain-Teed Products Corp., 387 F.2d 639 (5th Cir. 1968); NLRB v. Camco, Inc., 369 F.2d 125 (5th Cir. 1966). The matter here hinges on credibility choices, the significant decision being the trial examiner's acceptance of Fumero's testimony as true and his downgrading of Yoshida's and Young's testimony as 'embellished', 'self-contradictory' or 'exaggerated'; and because Pinas showed a 'lack of candor,' etc. On

the record before us, we are not so omniscient as to declare this decision to be unsupported by substantial evidence. NLRB v. Waycross Sportswear, Inc., 391 F.2d 294 (5th Cir. 1968); Nabors v. NLRB, 323 F.2d 686 (5th Cir. 1963)."

■ In the case at bar the Board properly concluded that the evidence established prima facie that Davis' discharge was attributable to his unionism. Hence it became incumbent upon the company, if it would avoid that result, to come forward with a valid explanation for the discharge. The real reason lay exclusively within its knowledge. Montgomery Ward & Co. v. N. L. R. B., 107 F.2d 555, 560 (7 Cir. 1939).

■ An explanation of the discharge was offered by the company through the testimony of Hartwig and Connor referred to above. The examiner did not credit their testimony. The record also showed Davis had a hot temper, blew

his mill whistle too often (see supra) and had or created problems with the lugs. (See supra.) However the company did not assign any of these as reasons for Davis' discharge.[2]

■ As this Court has often stated, "the existence of some justifiable ground for discharge is no defense if it was not the moving cause." N. L. R. B. v. Security Plating Co., supra, 356 F.2d at 728, and cases cited therein. Accord: N. L. R. B. v. Isis Plumbing & Heating Co., 322 F.2d 913, 922 (9 Cir. 1963).

"Thus," as the Board found, "the discharge of Davis is left unexplained unless it is found rooted in discriminatory considerations, the only apparent explanation that is fairly inferable from the evidence. * * *"

■ The Board properly drew the inference and made the conclusion that the company "discharged Davis to discourage him from supporting the Union

---

**2.** The record shows that Davis, in a phone conversation with Superintendent Eichan, *after* his discharge threatened to "beat him up." A reading of the cases cited by the Board and the Company demonstrate that the misconduct which will justify a court in refusing to enforce a Board order to rehire, depends upon the degree and kind of the misconduct and each case must be decided on an ad hoc basis.

In NLRB v. M. & B. Headwear Co., Inc., 349 F.2d 170 (4 Cir. 1965) an order was enforced for the rehiring of an employee whose conduct was more reprehensible than that of Davis. The court reasoned that to provoke an employee to the point that he commits an indiscretion and then refuse to reinstate "would put a premium on the employer's misconduct." (p. 174). In NLRB v. Morrison Cafeteria Co., etc., 311 F.2d 534, 538 (8 Cir. 1963) the employee cursed and offered to fight a supervisor but the order to rehire was enforced. In J. P. Stevens & Co., Inc., 157 NLRB 869, 878 note 8, enforced as modified in respects not here material 380 F.2d 292 (2 Cir.) the employee slapped a supervisor and the order to rehire was enforced. See Oneita Knitting Mills, Inc. v. NLRB, 375 F.2d 385 (4 Cir. 1967) and cases cited therein.

On the other hand in the cases cited by the Company, the conduct was much more flagrant. In NLRB v. Bin-Dicator Company, 356 F.2d 210 (6 Cir. 1966) the employee cursed; threatened to cause the plant manager to "spend some time in a wheel chair;" put on leather mittens covered with metal staples and made threatening gestures; and picked up a 6½-lb. metal casting and threatened to strike a foreman with it. In NLRB v. Trumbull Asphalt Compay, etc., 327 F. 2d 841 (8 Cir. 1964) there was continued harassment of non striking employees; Maxwell threw himself in front of a moving vehicle; and threatened the use of a "pretty good sized rock." In NLRB v. National Furniture Mfg. Co., 315 F.2d 280, 286 (7 Cir. 1963) the court found a "basic antagonism between Dillback (the employee) and National that would preclude future harmonious relations between them." In NLRB v. Valley Die Cast Corp., 303 F.2d 64, 66 (6 Cir. 1962) the *Board overruled the Examiner* and refused reinstatement to an employee who with threats prevented maintenance men from entering a building. In NLRB v. Kelco Corp., 178 F.2d 578, 580 (4 Cir. 1949) there was a ·physical assault on two non striking employees.

We cannot equate the single phone call by Davis, *after* discharge, with the situations in the cases cited by the Company.

and thereby violated Sec. 8(a) (3) and (1) of the Act."

As in NLRB v. Levinson's Owl Rexall Drugs, Inc., 405 F.2d 494 (9 Cir. 1968), where the Board disagreed with the Examiner, we find substantial evidence to support the Board's conclusions and order.

The Board's order is Enforced.