**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Padre DODGE, Respondent.**

**No. 72–1302.**

United States Court of Appeals, Ninth Circuit.

Jan. 2, 1973.

James Silvio Scott, Atty. (argued), William J. Pannier, III, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter G. Nash, Gen. Counsel, Washington, D. C., Wilford W. Johansen, Director, Los Angeles, Cal., for petitioner.

William E. Brown (argued), San Diego, Cal., for respondent.

Before WRIGHT and WALLACE, Circuit Judges, and CRARY, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

The National Labor Relations Board petitions this court pursuant to Section 10(e) of the National Labor Relations Act (29 U.S.C. § 160(e)) for enforcement of its order issued on March 29, 1971 (reported at 189 NLRB No. 55) against respondent Padre Dodge. The Board found that respondent had violated § 8(a)(1) by making coercive statements against the union [1] and by creating the impression of surveillance, and §§ 8(a)(3), 8(a)(1) by discriminatorily discharging four employees to discourage membership in the union. We enforce the Board's order in part and deny enforcement in part.

Respondent does not except to the findings relating to the § 8(a)(1) violation. Anti-union animus is therefore established. There was also evidence that might have supported a finding that the respondent had cause for discharging the four employees. We are thus confronted by the familiar inquiry: were the discharges motivated by anti-union animus, or by the alleged deficiencies in the employees' performances?

We note that it is particularly within the purview of the Board to determine in cases such as this on conflicting evidence what was the motivation for discharge. N.L.R.B. v. Winkel Motors, 443 F.2d 38 (9th Cir. 1971). The Board's finding must be upheld if supported by substantial evidence viewing the record as a whole, Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

---

* Hon. E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

1. International Association of Machinists and Aerospace Workers, AFL–CIO.

■ Respondent mounts its attack mainly on the trial examiner's credibility resolutions, claiming they are in error. Credibility resolutions should not be disturbed "unless a clear preponderance of all the relevant evidence convinces that they are incorrect." N.L.R.B. v. Luisi Truck Lines, 384 F.2d 842, 846 (9th Cir. 1967). We have examined the record and have found no reason to reverse the credibility findings.

■ The Board's finding that the discharges were motivated by a desire to discourage union membership is amply supported by substantial evidence in the record. We find particularly persuasive the fact that three of the employees were discharged during their first day at work after attendance at a union organization meeting.

Respondent contends that one of the discharged employees, Daily, was offered reinstatement but refused it, and that accordingly, the back-pay period should have been tolled by the offer. The record discloses that this employee was offered reemployment on March 15, 1970. On reporting to work the following day, he asked that his seniority and insurance benefits be reinstated and, in addition, he requested a $200 loan. Receiving no reply on these matters, he went to work that day and the following day. Then, assertedly because no reply was forthcoming, he left respondent's facility and did not return.

The trial examiner and a majority of the Board[2] found that Daily had not been offered a full reinstatement within the meaning of the Act. The record does not support the Board's determination but does support chairman Miller's dissenting views.

■ There is absolutely no evidence of lack of good faith on the part of respondent in offering Daily reemployment and the trial examiner so indicated for the record.[3] Daily had previously been employed, either quit or was terminated and reemployed on many occasions. Each time, his seniority and health insurance benefits were reinstated to his satisfaction. His demand for $200, because he "needed the money," was an obvious attempt to coerce his employer into paying something that was not due. Daily's threat was an ultima-

2. A footnote to the Board's Decision and Order recites:

"Chairman Miller would not adopt the Trial Examiner's finding that the reemployment of Daily, who had previously been unlawfully discharged, did not constitute full reinstatement within the meaning of the Act. In this regard the record shows that Daily was offered employment on March 15, 1970; that on reporting to work the following day he insisted he wanted his seniority and insurance reinstated, and requested a loan of $200 against his vacation pay. He received no immediate reply on these matters but, nevertheless, went to work that day and also the following day. Then, assertedly because no reply was yet forthcoming on the above matters, he left Respondent's facility and did not return. In Chairman Miller's view, there is no basis for finding that Respondent's offer of employment to Daily was either expressly or impliedly conditioned on Daily's surrendering any of his previous rights and privileges. Furthermore, Daily's precipitous quitting the day following his reemployment prevented any resolution of the questions he had asked concerning his reinstatement which questions he had also intertwined with a request for a $200 loan. In these circumstances and as there is no evidence that Respondent in offering Daily reemployment was not acting in good faith, Chairman Miller would find insufficient proof that Respondent's offer of reemployment was not 'reinstatement' under the Act. Thereafter, Daily voluntarily quit."

3. "It would seem to me from what I have heard that this man was in good faith offered reemployment."

* * * * *

"It poses a very nice question. It would seem to me that if a man has been in good faith offered reinstatement, that he is under a duty to accept it; failing to accept it, his back pay is terminated; or having accepted and not following it through. So think it over, because I am giving you my thinking on it, and I have little doubt in my mind where I might wind up relative to April 21st." T.R. pp. 124–125.

tum: "Well, I will give you until nine o'clock tonight."

Respondent was not in the business of lending money, had not previously established a pattern of doing so in dealing with its employees, and was not obliged to knuckle under to Daily's unreasonable demands. An offer to reinstate an illegally discharged employee should be on the same terms that applied when the employee was fired. And the Board's remedy should restore "the situation, as nearly as possible, to that which would have obtained but for" the unfair labor practices. Phelps Dodge Corp. v. N.L. R.B., 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941).

Accordingly, we deny enforcement of that part of the Board's order which would grant Daily back pay after March 17, 1970 or grant him the status of an employee on April 21, 1970, the date of the election.

In all other respects the order of the Board is enforced.